10 Cal.App.4th 706 (1992)
12 Cal. Rptr.2d 659
In re the Marriage of SHARON and RON RICO.
SHARON RICO, Appellant,
v.
RON RICO, Respondent.
Docket No. A054262.
Court of Appeals of California, First District, Division Five.
October 26, 1992.
*708 COUNSEL
Thomas & Urlik and Ande Thomas for Appellant.
James F. Clark for Respondent.
[Opinion certified for partial publication.[*]]
OPINION
KING, Acting P.J. 

I

INTRODUCTION
In this case we hold when, prior to marriage, spouses each contributed separate property funds to purchase real property, with title taken in both names as tenants in common, and payments after marriage are made with community funds, the correct method to calculate the separate and community interests of the parties upon dissolution is the same method as when the property is the separate property of only one spouse and payments after marriage are made with community property funds, that method generally known as the Moore-Marsden rule.

*709 II

BACKGROUND
Sharon and Ron Rico married in 1980 and separated in 1988. They had lived together for a year before the marriage. In 1979, they bought a house for $150,334, taking title as tenants in common. Ron made a deposit of $3,109 toward the purchase of the residence and paid into escrow a balance due of $33,714. Sharon paid Ron $1,500 toward the purchase. Ron subsequently contributed additional sums for improvements on the property before marriage.
In July 1986, the parties refinanced the residence and converted title to joint tenancy. The fair market value of the property at the time of conversion was $270,000.
After a trial on bifurcated property issues, the court rendered a statement of decision which disposed of the residence by determining "the respective separate property equities of the parties as of July of 1986." The court found that Sharon had contributed $1,500 toward the purchase of the residence, and Ron had contributed $36,823 toward the purchase and $8,965 toward improvements. Sharon's separate property equity consisted of (1) her $1,500 contribution, which was 1 percent of the purchase price, and (2) an additional sum of $1,196, to account for appreciation in the property's value as of July 1986, which was 1 percent of the appreciation. Ron's separate property equity consisted of (1) the $36,823 and $8,965 the court found he had contributed toward purchase and improvements, which was 30 percent of the purchase price and (2) an additional sum of $35,899, to account for appreciation as of July 1986, which was 30 percent of the appreciation. The court ordered that these amounts (totaling $2,696 for Sharon and $81,687 for Ron) were to be reimbursed to the respective parties upon sale of the residence, and the remaining balance was to be divided equally after adjustment for offsets and credits between the parties.

III

DISCUSSION

A. Timeliness of the appeal.[*]
.... .... .... .... .... .... .... .

*710 B. The method of reimbursement.

(1) Sharon contends (1) as tenants in common, the parties each owned a one-half separate property interest in the residence as of July 1986, and (2) alternatively, the court misapplied the law in apportioning the parties' interests.
Although the tenancy in common raised a presumption of equal ownership (Caito v. United California Bank (1978) 20 Cal.3d 694, 705 [144 Cal. Rptr. 751, 576 P.2d 466]), the court was authorized to order an equitable compensatory adjustment to compensate the parties for their respective use of separate funds to purchase and improve the residence. (Code Civ. Proc., § 872.140; In re Marriage of Leversee (1984) 156 Cal. App.3d 891, 897 [203 Cal. Rptr. 481].) The statement of decision explained that this was what the court had decided to do. Thus, the court properly awarded unequal separate property interests in the residence. And because the residence was converted into joint tenancy during the marriage, raising a presumption of community property (Civ. Code, § 4800.1), the provisions of Civil Code section 4800.2 for reimbursement of the separate property contributions were applicable. (In re Marriage of Perkal (1988) 203 Cal. App.3d 1198, 1202 [250 Cal. Rptr. 296]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1992) ¶¶ 8:101.8-101.11, p. 8-85.)
(2) In the normal reimbursement situation, the family residence was originally the separate property of one party only, and the measure of reimbursement is the fair value of the residence at the time of conversion to joint tenancy, less outstanding encumbrances and any nongift community property contributions to principal before conversion. (In re Marriage of Neal (1984) 153 Cal. App.3d 117, 124, fn. 11 [200 Cal. Rptr. 341]; Hogoboom & King, op. cit. supra, ¶ 8:102.11, at p. 8-97; see In re Marriage of Moore (1980) 28 Cal.3d 366 [168 Cal. Rptr. 662, 618 P.2d 208]; In re Marriage of Marsden (1982) 130 Cal. App.3d 426 [181 Cal. Rptr. 910].) Here, both parties had a separate property interest in the residence before conversion  as calculated by the judge pursuant to the equitable compensatory adjustment  so the proper measure of reimbursement for each party is the fair value of his or her separate property interest at the time of conversion, less encumbrances and nongift community property contributions to principal before conversion. The statement of decision explained that the court was following this rule in determining the parties' rights to reimbursement.
(3) The judge's method of calculating the parties' separate property interests as of the date of conversion achieved the correct measure of reimbursement. By calculating the percentage of the purchase price represented by the contributions for purchase and improvements, the court determined the extent of the parties' unequal separate interests in the residence. *711 By applying these percentages to the appreciation in value as of the conversion date, and then adding the resulting sums to the contributions for purchase and improvements, the court determined the full extent of the parties' unequal separate interests in the residence as of the conversion date.
A strict application of the Moore-Marsden measure of reimbursement would also require an apportionment of principal reduction of the mortgage as a result of the use of separate funds to make mortgage payments. Under the peculiar facts of this case, however, the court's finding that the parties were equally credited for all monthly payments made such calculations unnecessary.[1] The same result was achieved by the court's equal disbursement of sums remaining from the sale of the residence after the parties had been reimbursed their respective separate property interests.
In the remaining unpublished portion of this opinion, we correct minor errors by the trial court in calculating Ron's contributions for purchase and improvements.

C. Calculation errors.[*]
.... .... .... .... .... .... .... .

IV

DISPOSITION
The judgment is modified to provide that Ron is entitled to an immediate separate property equity reimbursement of $73,489, not $81,687, and is affirmed in all other respects. The parties shall bear their own appellate costs.
Haning, J., and Walker, J.,[] concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III A and III C.
[*] See footnote, ante, page 706.
[1] This subject is not discussed in the statement of decision but there is an implied finding to this effect from the court's calculations  that is, that payments reducing the principal balance before marriage were made either from joint funds or on behalf of both parties. (See, e.g., In re Marriage of Arceneaux (1990) 51 Cal.3d 1130 [275 Cal. Rptr. 797, 800 P.2d 1227].) Obviously, payments made after marriage were from community earnings and were attributable equally to each of the parties.
[] Judge of the Napa Superior Court sitting under assignment by the Chairperson of the Judicial Council.