[No. B203089. Second Dist., Div. Six. Sept. 15, 2008.]

In re the Marriage of BARBARA and FRANK GORDON HOLTEMANN.
BARBARA HOLTEMANN, Respondent, v.
FRANK GORDON HOLTEMANN, Appellant.

COUNSEL

Law Offices of Bernard N. Wolf, Bernard N. Wolf; and Ginny A. Browne for Appellant.

Robert H. Mott for Respondent.

## OPINION

**PERREN, J.**—In *In re Marriage of Starkman* (2005) 129 Cal.App.4th 659 [28 Cal.Rptr.3d 639], we concluded that merely characterizing separate property transferred to a trust established pursuant to an estate plan as "community property" is insufficient to effectuate a transmutation of the property in the absence of " 'language which expressly states that the characterization or ownership of the property is being changed.' " (*Id.*, at p. 664, quoting *Estate of MacDonald* (1990) 51 Cal.3d 262, 272 [272 Cal.Rptr. 153, 794 P.2d 911].) Here we are presented with such a clear expression, in the form of an express agreement to transmute property transferred into a trust established for the same purpose. We conclude that a present transmutation of separate property to community property was thereby effected, notwithstanding language in the transmutation agreement and trust that purports to qualify, limit or condition the transfer upon the death of either spouse.

Frank Gordon Holtemann appeals from a bifurcated order issued in favor of his former wife, Barbara Holtemann, regarding the legal effect of a spousal property transmutation agreement executed during the marriage. Frank[1] contends the family law court erred in finding that the agreement contained an "express declaration" sufficient to transmute his separate property into community property, as contemplated by Family Code section 852, subdivision (a).[2] We conclude otherwise and affirm.

### FACTS AND PROCEDURAL HISTORY

Frank and Barbara were married on June 21, 2003, and separated on June 2, 2006. The parties had no children together, although each has adult children from prior marriages.

When the parties were married, Frank had considerable assets while Barbara had few. The parties jointly retained attorney Joseph Look to prepare estate planning documents that would eliminate the need for probate and minimize taxes in the event of either spouse's death. On March 10, 2005, the parties executed a document entitled "Spousal Property Transmutation Agreement" (the Transmutation Agreement) and another entitled "Holtemann Community Property Trust" (the Trust). An introductory provision in the Transmutation Agreement states that "[t]he parties are entering into this

---

[1] We refer to the parties by their first names for ease of reference, and intend no disrespect.

[2] All subsequent statutory references are to the Family Code.

agreement in order to specify the character of their property interests pursuant to the applicable provisions of the California Family Code. This agreement is not made in contemplation of a separation or marital dissolution and is made solely for the purpose of interpreting how property shall be disposed of on the deaths of the parties." The parties also acknowledged that Look had explained the "legal consequences" of the agreement, and that they had decided not to retain separate counsel after being advised of the advantages of doing so.

### The Transmutation Agreement

Article 2.1 of the Transmutation Agreement states as follows: "Transmutation of Husband's Separate Property to Community Property. Husband agrees that the character of the property described in Exhibit A (including any future rents, issues, profits, and proceeds of that property) is hereby transmuted from his separate property to the community property of both parties. Exhibit A is attached to and made part of this agreement." Exhibit A, which is identified as both "Husband's Separate Property Being Transmuted to Community Property" and a "List of Community Property," lists a total of eight items of property, including the spouses' residence in Nipomo as well as stock portfolios and land, building, and gas well partnership interests identifying the "Frank G. Holtemann 1996 Trust" as the owner. Article 2.3 further provides that "[c]oncurrently herewith, Husband and Wife have entered into a Declaration of Trust for the Holtemann Community Property Trust; it being the intention of the parties that the property transmuted by Husband hereunder shall be transferred and assigned into such Trust. Wife acknowledges that the transmutation of Husband's separate property into community property herewith was undertaken upon the express condition that the disposition of the trust estate of said Trust, upon the death of Husband and of Wife, as provided for in said Declaration of Trust, dated March 10, 2005, shall remain in effect, and not be amended, modified or changed by Wife, so that upon the death of the parties, the property subject to this Agreement will pass as provided in said Declaration of Trust. The parties further acknowledge that, but for such agreed disposition of the subject property, settlor Frank Holtemann would not have effected the within transmutation of his separate property into community property. Wife agrees not to amend, modify or change the dispositive provisions of any of the trusts established pursuant to said Declaration of Trust without Husband's prior written consent and agreement."

### The Trust

Article 1.3 of the Trust provides: "Statement of Intent. This is a joint trust established by the settlors in order to hold community property of the settlors,

which community property was created by the transmutation of separate property of settlor Frank G. Holtemann concurrently with the execution of this trust instrument. The parties each acknowledge that the transmutation of Frank Holtemann's separate property into community property was undertaken upon the condition of and with this trust instrument in mind, in particular with the disposition of the trust estate upon the death of the settlors as provided for herein in mind; and but for such agreed disposition, settlor Frank Holtemann would not have effected the transmutation of his separate property into community property, with which this trust was funded." Article 2.2, entitled "Character of Trust Assets," provides that "[a]ll community property of the settlors transferred to this trust, and the proceeds of all such property, shall continue to be community property under the laws of California, subject to the provisions of this instrument. All separate and quasi-community property shall remain the separate or quasi-community property, respectively, of the contributing settlor."

The Trust further states that "[d]uring the joint lifetimes of the settlors, any trust created by this instrument may be revoked or terminated, in whole or in part, by either settlor as to any separate or quasi-community property of that settlor and any community property of the settlors." The Trust also states that "[u]nless otherwise provided in the revocation or this trust instrument, *any community property so returned shall continue to be the community property of the settlors.*" (Italics added.)

### *The Proceedings*

Barbara filed a petition to dissolve the marriage on August 1, 2006. On October 19, 2006, Frank issued notice that he had exercised his right to revoke the Trust. The parties subsequently stipulated to bifurcate the trial to determine the validity of the Transmutation Agreement. The trial court subsequently found that under the express terms of the Transmutation Agreement, Frank had transmuted his separate property identified in exhibit A to community property. In addition, the court ordered Frank to pay $13,000 to Barbara's attorney for the purpose of retaining experts to value the community property identified in exhibit A to the Transmutation Agreement.

The court issued a certificate of probable cause certifying the order for interlocutory review, and we subsequently granted Frank's motion for leave to appeal the order. (§ 2025; Cal. Rules of Court, rule 5.180(d), (f).)[3]

---

[3] On May 12, 2008, we affirmed the trial court's order in a published opinion. We subsequently granted rehearing and ordered the parties to file supplemental briefs addressing the application of sections 853, subdivision (a), and 2640, subdivision (b).

## DISCUSSION

Frank contends that the Transmutation Agreement and the Trust are insufficient to establish his express intent to transmute his separate property identified in exhibit A to community property, as contemplated by section 852, subdivision (d). According to Frank, his intent in this regard was rendered ambiguous by language in both documents indicating that they were executed solely for estate planning purposes. We disagree.

■ "Section 850, subdivision (b), provides that married persons may transmute the separate property of either spouse into community property 'by agreement or transfer,' subject to the provisions of sections 851 to 853. Section 852, subdivision (a), provides: 'A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' Our Supreme Court has interpreted an 'express declaration' as language expressly stating that a change in the characterization or ownership of the property is being made. (*Estate of MacDonald, supra,* 51 Cal.3d [at p.] 272.) '[A] writing signed by the adversely affected spouse is not an "express declaration" for the purposes of [Civil Code] section 5110.730(a) [now Fam. Code, § 852, subd. (a)] *unless* it contains language which expressly states that the characterization or ownership of the property is being changed.' [Citation.]" (*In re Marriage of Starkman, supra,* 129 Cal.App.4th at pp. 663–664.) "The express declaration must unambiguously indicate a change in character or ownership of property. [Citation.]" (*Id.,* at p. 664.)

■ "In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence. [Citations.]" (*In re Marriage of Starkman, supra,* 129 Cal.App.4th at p. 664.) The Transmutation Agreement and Trust at issue in this case establish that Frank intended to, and did, transmute from separate to community property that which was identified in the incorporated exhibit. The Transmutation Agreement unambiguously states that "Husband agrees that the character of the property described in Exhibit A (including any future rents, issues, profits, and proceeds of that property) *is hereby transmuted from his separate property to the community property of both parties.*" (Italics added.) The attached exhibit A is later expressly identified as "Husband's Separate Property Being Transmuted to Community Property." In referencing the Trust, the Transmutation Agreement states it is "the intention of the parties that *the property transmuted by Husband hereunder* shall be transferred and assigned into such Trust." (Italics added.) It also states that "Wife acknowledges that *the transmutation of Husband's separate property into community property herewith*" (italics added) is conditioned on her agreement to refrain

from amending, modifying or changing the Trust so that "the property subject to this Agreement will pass as provided in said Declaration of Trust. The parties further acknowledge that, but for such agreed disposition of the subject property, *settlor Frank Holtemann would not have effected the within transmutation of his separate property into community property.*" (Italics added.) The Trust similarly provides that it was created "in order to hold community property of the settlors, *which community property was created by the transmutation of separate property of settlor Frank G. Holtemann concurrently with the execution of this trust instrument.*" (Italics added.) As the trial court aptly noted, "[a] clearer statement of a transmutation is difficult to imagine."

An express declaration of transmutation does not necessarily require use of the terms "transmutation," "community property," or "separate property." (*In re Marriage of Starkman, supra*, 129 Cal.App.4th at p. 664.) Unlike in *Starkman*, in which "transmutation" is never mentioned, here the word is stated repeatedly and pointedly. There can be no doubt that, with the advice of counsel, the parties chose this unique and specific term of art.

Frank nevertheless contends that these repeated, express declarations of transmutation were rendered ambiguous by the statement in the Transmutation Agreement that "[t]his agreement is not made in contemplation of a separation or marital dissolution and is made solely for the purpose of interpreting how property shall be disposed of on the deaths of the parties," as well as statements in both documents reflecting the parties' agreement that Frank would not have transmuted his separate property had Barbara not agreed to refrain from exercising her right to amend, modify or change the trust. According to Frank, "[t]hese provisions negate any legally-mandated conclusion that the [Transmutation] Agreement established the requisite 'unambiguous' proof of a transmutation in this marital dissolution action, prior to the parties' deaths."

We are not persuaded. Regardless of the motivations underlying the documents, they contain the requisite express, unequivocal declarations of a present transmutation. Moreover, the documents reflect that Frank was fully informed of the legal consequences of his actions. Nothing in the record indicates that he was misinformed or misled. On the contrary, counsel sent Frank a letter "reminding" him that "this 'transmutation' of separate into community property has clear and potentially irreversible consequences . . . ."[4] The Trust also expressly provides that if Frank exercised his

---

[4] While we do not consider extrinsic evidence in deciding whether a transmutation occurred in the first instance (*Estate of MacDonald, supra*, 51 Cal.3d at pp. 271–272), counsel's letter is relevant to rebut Frank's claim that his express declaration of transmutation was unknowing or inadvertent.

right of revocation during his lifetime—an event that came to pass—any community property that had been transferred into the Trust would continue to be community property. Under the circumstances, Frank will not be heard to complain that his express declaration of transmutation was unknowing or that he " 'slip[ped] into a transmutation by accident.' [Citation.]" (*In re Marriage of Starkman, supra*, 129 Cal.App.4th at p. 664.)

Frank also urges us to treat his express declarations of transmutation differently from other express declarations because he did not have his own attorney. He asserts that "[s]ince Mr. Look represented both parties in the estate plan, he should have added an express disclaimer, to the effect that the transmutation would be inoperative on marital dissolution." As we have already noted, however, Frank was fully advised of the consequences in failing to secure separate counsel, yet chose to proceed.

■ In any event, we are not aware of any authority for the proposition that a transmutation, once effected, can be limited in purpose or otherwise rendered conditional or temporary. Once the character of the property has been changed, a "retransmutation" can be achieved only by an express agreement to that effect that independently satisfies the requirements of subdivision (a) of section 852. As the trial judge stated: "Husband argues that the transmutation was limited to estate purposes only. In other words, Frank wishes to have his cake and eat it too. He argues that, in the event of either his or Barbara's death, the survivor would be able to use the Transmutation Agreement to claim the property as community property, thus obtaining a full step up in basis to the fair market value of the property at date of death, while at the same time denying the validity of the Transmutation Agreement as an instrument which created community property. Thus, when it would benefit either Frank or his estate, Frank wishes to characterize the property as community. However, when it would be detrimental to Frank, he wishes to ignore the transmutation and call the property separate." In a similar vein, Frank overlooks the fact that the transmutation allowed him to characterize all income and distributions of principal as community property during the marriage, a tax benefit he otherwise would not have enjoyed.

Frank also contends that "[a]s a matter of public policy, . . . Courts should generally exclude revocable estate planning documents like the [Transmutation] Agreement and Trust as evidence of transmutation upon marital dissolution." This contention was not raised below, so it is waived. (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249 [100 Cal.Rptr.2d 403].) In any event, the policy he identifies—"to encourage spouses to provide for their surviving spouses in their estate plans"—is not undermined by our conclusion. We conclude, however, that his chosen language speaks to a contrary intent.

■   For the first time on appeal, Frank also urges us to conclude that the Transmutation Agreement and Trust are governed by section 853, subdivision (a), which provides that "[a] statement in a will of the character of property is not admissible as evidence of a transmutation of property in a proceeding commenced before the death of the person who made the will." Aside from having waived the claim, Frank fails to demonstrate that section 853 is intended to apply to anything other than wills. The only published decision addressing the issue holds otherwise (*In re Cecconi* (Bankr. N.C.Cal. 2007) 366 B.R. 83), and we are persuaded by its reasoning. As we previously recognized in analyzing section 853, wills " 'are not intended to convey a *present interest* in the property. Further, a will is ambulatory in nature, subject to revocation or modification during the testator's life; it "speaks" only as of the date of the testator's death.' " (*Estate of Gallio* (1995) 33 Cal.App.4th 592, 598 [39 Cal.Rptr.2d 470]; see *In re Cecconi, supra*, at p. 127; Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 853, p. 484 ["Section 853 is consistent with the general concepts that a will is ambulatory and subject to subsequent revocation or modification and does not speak until the testator's death."].) A trust, on the other hand, conveys to the trustee a present interest that passes immediately upon execution. (*In re Cecconi, supra*, at p. 127.) Moreover, "[t]he language of Section 853 says '[a] statement in a will' and does not have any language including will-substitutes." (*Ibid.*) While Frank notes that commentators have deemed it "unclear" why the law distinguishes between wills and trusts in this regard (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2007) ¶ 8:846.1), those commentators do not dispute that the distinction exists.   ■   Any change in the law is the province of the Legislature.

In his petition for rehearing, Frank warns that our decision will "create havoc" on the "tens of thousands of married couples in California who have executed living trusts." We are confident no such crisis will befall. As the trial court found, the transmutation does not affect Frank's right to seek reimbursement for his contribution of separate property to the community estate pursuant to section 2640, subdivision (b).[5] Neither party has ever disputed this finding.

---

[5] Section 2640, subdivision (b) provides: "In the division of the community estate . . . , unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

Because we reject Frank's claim that the assets identified in exhibit A to the Transmutation Agreement and Trust are his separate property, his contention that the court erred in ordering him to pay Barbara's fees incurred in valuing those community property assets is moot.

## DISPOSITION

The order is affirmed. Respondent shall recover costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 10, 2008, S167511.