Filed 12/18/13  Marriage of Thieriot CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of ELIZABETH THIERIOT and CHARLES THIERIOT. | |
| ELIZABETH THIERIOT,<br><br>        Appellant,<br><br>v.<br><br>CHARLES THIERIOT,<br><br>        Respondent. | A132703<br><br>(Marin County<br> Super. Ct. No. FL081905) |

Appellant Elizabeth Thieriot (Wife) appeals from a judgment entered on July 14, 2011, resolving her marital dissolution action against respondent Charles Thieriot (Husband).  Wife challenges the trial court's rulings that during the marriage Husband transmuted his separate real property to community property, and on dissolution of the marriage he was entitled to and had not waived reimbursement for the equity value of the real property on the date of the transmutation.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Before Wife and Husband were married on September 22, 2001, they entered into a prenuptial agreement, which included the following pertinent provisions:

> 3.1 . . . [E]ach party intends that certain property described herein, owned by them at the time of their marriage, and all additional value, or property of any nature which comes to either of them during their marriage from their respective separate interests, shall be the separate property of the person owning or receiving that property. . . .

1

3.3 . . . [E]ach party intends that there be no      community property and to the extent that they can so agree, they expressly agree       that the community property laws in the Family Code of the State of California or any law of California or any other jurisdiction that creates or bestows rights and obligations upon them as married persons after they are married to one another, either during their lifetimes or upon their death, shall not apply to them.

13.1 The parties agree that there be no community property as a result of their marriage.  They agree that all property acquired by them during their marriage shall be and remain the separate property of the acquiring party at the time of acquisition . . . .

19.1 Notwithstanding any other provision of this Agreement, unless the parties have agreed otherwise in a writing, executed by both parties, which refers specifically to this Agreement, title shall determine the ownership interest of each party in any real property held by them or in any personal property which is specifically titled.  The parties understand that holding property as community property, tenants in common, in joint tenancy, or in other forms may have important legal consequences to each of them.  They have been advised that they should review and understand the consequences of the form of ownership at any time they take title to assets or property in any form as joint owners. . . .

Sandy Surf was listed as Husband's separate property in an exhibit attached to the prenuptial agreement.

On February 18, 2004, the parties both signed a limited warranty deed in which Husband transferred title of Sandy Surf from "CHARLES C. THIERIOT, Trustee of the Charles C. Thieriot Revocable Trust dated February 27, 1991" as " 'Grantor' to CHARLES C. THIERIOT, Trustee of the Charles C. Thieriot Revocable Trust dated February 27, 1991, and ELIZABETH L. THIERIOT, Trustee of the Elizabeth L. Thieriot Revocable Trust, under agreement dated December 21, 2001, both with full powers to sell, lease, mortgage, convey, assign or otherwise deal with and dispose of all lands of the trust estate. . . ., hereinafter called the " 'Grantee[s][ [1] ][.]' " The deed further provided,

---

[1]     The deed provides that "the terms 'Grantor' and 'Grantee,' as and when used herein, or any pronouns used in place thereof, shall mean and include . . . the singular or plural number . . . ."

"That in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration in hand paid, the receipt of which is hereby acknowledged, the Grantor does hereby grant, bargain, sell, and convey unto the Grantee[s] [Sandy Surf] . . . [¶] And the reversions, remainders, rents, issues, and profits thereof and all of the estate, right, title, and interest of the Grantor, both at law and in equity, therein and thereto; [¶] TO HAVE AND TO HOLD the same, together with all buildings, improvements, rights, easements, privileges, and appurtenances thereon and thereto belonging or appertaining or held and enjoyed therewith, unto the Grantee[s] and Grantee[s]'s heirs, devises, and personal representatives, absolutely and forever, in the following proportions and estates: [¶] CHARLES C. THIERIOT, Trustee as aforesaid, and said Grantee's successors in trust and assigns, an undivided fifty percent (50%) interest, IN TRUST; [¶] ELIZABETH L. THIERIOT, Trustee as aforesaid, and said Grantee's successors in trust and assigns, an undivided fifty percent (50%) interest, IN TRUST; [¶] and as between Grantee[s] as listed above in their respective shares. The whole of said property shall be Community Property of Charles C. Thieriot and Elizabeth L. Thieriot (husband and wife) under the laws of the State of California where they are both domiciled." The deed also included the following paragraph: "This transfer of title is an exception to paragraphs 3.3 and 13.1 of Prenuptial Agreement between Charles C. Thieriot and Elizabeth Huntley, signed June 27 and 28, 2001, and is not intended to modify or invalidate paragraph 3.3. or 13.1 or any other provision of the Prenuptial Agreement between Charles C. Thieriot and Elizabeth Huntley, signed June 27 and 28, 2001, which shall remain in full force and effect." The parties separated about one year after signing the deed. They remarried on December 20, 2006, but separated 16 months later in April 2008 and Wife sought dissolution of the marriage.

In resolving the parties' dispute regarding the division of Sandy Surf, the trial court found, in pertinent part, that the limited warranty deed was both a conveyance and binding contract between the parties, creating "a specific exception to paragraphs 3.[3] and 13.1 of the Parties' Prenuptial Agreement, so that title as is stated in the [deed] determines ownership of Sandy Surf." The court further found the effect of the parties'

3

execution of the deed was to transmute Sandy Surf from "being [Husband's] sole and separate property into the Community Property of [both parties] under the laws of the State of California," and Husband's right to reimbursement of his separate property contribution to the community asset survived and was not waived by the language in the deed. The court also found that Sandy Surf was worth $14,500,000 on the date of trial, Husband was entitled to be reimbursed $12,958,000 (fair market value of the property on the date of the transmutation), and therefore, the net community interest in the property was $1,542,000 ($14,500,000 less $12,958,000). A final judgment of dissolution was entered on July 14, 2011. Wife timely appeals.

## DISCUSSION

Wife presents several arguments challenging the trial court's division of Sandy Surf after dissolution of the parties' marriage, none of which requires reversal.

At issue here is a transmutation of Husband's separate property interest in Sandy Surf by a limited warranty deed. (Fam. Code, § 850.[2]) "In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence." (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664.) "Under the modern rule of interpretation at least, deeds are to be construed like any other contract, and the intent of the grantor arrived at, if possible, from the terms set forth in the instrument." (*Sherriff v. Sherriff* (1917) 32 Cal.App. 681, 685 (*Sherriff*).) "When an appeal depends solely upon the construction to be given to the language of a contract, from the instrument itself, the reviewing court is called upon to determine the meaning thereof, as a matter of law. Under such circumstances, the rule on appeal, which precludes the appellate court from disturbing the determination of the trial court, where

---

[2]    All further unspecified statutory references are to the Family Code. Section 850 reads, in pertinent part: ". . .[M]arried persons may by agreement or transfer, with or without consideration, do any of the following: [¶] (a) Transmute community property to separate property of either spouse. [¶] (b) Transmute separate property of either spouse to community property. [¶] (c) Transmute separate property of one spouse to separate property of the other spouse."

4

there is substantial evidence to support its conclusions, has no application. [Citations.] [Because] no evidence, other than the deed itself, [was] received [in this case in the trial court], the construction of the deed is a question of law for this court to determine on appeal." (*Mitchel v. Brown* (1941) 43 Cal.App.2d 217, 222.)

Wife contends the language in the deed does not support a finding that Husband transmuted Sandy Surf from his separate property directly to community property. According to Wife, the language in the deed shows there were two transmutations: a transmutation of Husband's separate property to the separate property of each spouse, and then a transmutation of both spouses' separate properties to community property. We cannot agree with Wife's interpretation of the deed. "The deed itself . . . does not purport to convey [to Wife] a fee interest to the extent of one-half of [Sandy Surf]. While it contains general terms, it also contains terms of limitation when it is recited that the estate conveyed is" an undivided 50 percent interest with the whole being community property. (*Sherriff, supra*, 32 Cal.App. at p. 685; see *id.* at pp. 683, 685 [husband's bargain and sale deed did not convey a fee interest to wife to the extent of one-half of the property but only a community interest as the deed recited that the estate conveyed was " 'an undivided or community interest' "].) Thus, the only reasonable interpretation of the language in the deed is that there was one transmutation of Husband's separate property to community property by placing the title to Sandy Surf into joint ownership, with the whole to be community property. (See Fam. Code, §§ 2581[3], 2650[4]; see *In re*

---

[3]    Section 2581 reads: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

5

*Marriage of Weaver* (2005) 127 Cal.App.4th 858, 865 (*Weaver); In re Marriage of Neal* (1984) 153 Cal.App.3d 117, 123-124 (*Neal*) [discussing predecessor statute to § 2581, Civil Code former § 4800.1], disapproved on other grounds in *In re Marriage of Buol* (1985) 39 Cal.3d 751, 758, fn. 8, 763, fn. 10, and *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451, fn. 13.)

Similarly, we see no merit to Wife's argument that Husband waived his right to reimbursement for his contribution of Sandy Surf to the community. Section 2640 provides, in pertinent part, that "[i]n the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source." (*Id*., subd. (b).) "The effect of the statute is to overturn a long line of cases which had held that absent an agreement to the contrary, separate property contributions to the community were deemed to be gifts to the community. [Citations.] Apparently, the Legislature concluded it was fairer to the contributing spouse to permit reimbursement for separate property contributions upon dissolution of the marriage. [Citation.] Thus, under section [2640], 'the tables are turned so that the separate property interest is now *preserved* unless the right to reimbursement is waived in writing.' " (*In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1201-1202 (*Perkal*) [discussing predecessor statute to § 2640, Civil Code former § 4800.2].)

---

[4]     Section 2650 reads: "In a proceeding for division of the community estate, the court has jurisdiction, at the request of either party, to divide the separate property interests of the parties in real and personal property, wherever situated and whenever acquired, held by the parties as joint tenants or tenants in common. The property shall be divided together with, and in accordance with the same procedure for and limitations on, division of community estate."

To establish a waiver of the right of reimbursement, Wife must demonstrate that Husband actually intended to relinquish his right to reimbursement or acted " 'so inconsistent with the intent to enforce th[e] right in question as to induce a reasonable belief that it has been relinquished.' " (*Perkal, supra,* 203 Cal.App.3d at p. 1203.)  Wife attempts to meet her burden of showing waiver by relying on the language in the deed in which Husband grants to both spouses as grantees "the reversions, remainders, rents, issues, and profits thereof and all of the estate, right, title, and interest of [Husband], both at law and in equity, therein and thereto."  However, Wife's argument ignores the fact that we do not read the language of the deed in isolation.  As we have concluded, despite the general language in the deed Husband transmuted his separate property directly to community property.  We therefore necessarily reject Wife's claim of waiver as "simply too strained an argument to accept" (*id*. at p. 1203), especially in the absence of any clear statement in the deed or other documentary proof that the parties agreed Husband's separate property contribution was either a gift to the community (*id*. at p. 1204) or a conveyance of separate property to Wife.  (See *Weaver, supra,* 127 Cal.App.4th at p. 870 [court follows "the current trend in construing section 2640 broadly to allow reimbursement for real property contributions, unless there is a written statement, apart from a joint tenancy deed, which specifically waives the right to reimbursement"]; *In re Marriage of Kahan* (1985) 174 Cal.App.3d 63, 71-72 (*Kahan*) [court held joint tenancy deed itself was not sufficient as a written waiver of a right to reimbursement for spouse's separate property contribution to acquisition of community property].)

Lastly, we see no merit to Wife's assertion that there is no basis in law or fact to allow a spouse to recover the equity value of separate property after transmutation by joint ownership deed to the other spouse.  She correctly concedes the courts have consistently held to the contrary by allowing this type of reimbursement on the dissolution of the parties' marriage.  (See, e.g., *In re Marriage of Rico* (1992) 10 Cal.App.4th 706, 710; *In re Marriage of Witt* (1987) 197 Cal.App.3d 103, 108-109;

*Kahan, supra,* 174 Cal.App.3d at p. 72; *Neal, supra,* 153 Cal.App.3d at p. 124 & fn.11.) Contrary to the Wife's contentions, we see nothing unfair about allowing Husband reimbursement for the equity value of Sandy Surf on the date of transmutation. During the marriage Wife could use and enjoy Sandy Surf without providing any separate financial contribution to the original purchase price of the property. Husband's reimbursement for the equity value of Sandy Surf "is supported by important policy considerations." (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 919 (*Walrath*).) It "encourages married persons to freely and without reservation contribute their separate property assets to benefit the community, and alleviates the need for spouses to negotiate with each other during marriage regarding continuing reimbursement rights. Under this interpretation, section 2640 protects the general expectations of most people in marriage, i.e., that spouses will be reimbursed for significant [financial] contributions to the community should the community dissolve." (*Walrath, supra,* at p. 919.)[5]

In sum, we conclude the trial court properly ruled that during the marriage Husband transmuted Sandy Surf from his separate property to community property, and on the dissolution of the marriage he was entitled to and had not waived reimbursement for the equity value of Sandy Surf on the date of the transmutation.

---

[5]    In light of our determination, we do not need to address Wife's other contentions.

**DISPOSITION**

The judgment is affirmed.  Respondent Charles Thieriot is awarded costs on appeal.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.