Filed 9/28/16  Estate of Baer CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of WILMA MARLENE BAER, Deceased. | |
| CHRISTINE BAER-SMITH, as Executor, etc., | G050958 |
| Petitioner and Appellant, | (Super. Ct. No. 30-2013-00648457) |
| v. | |
| VERN SHAPPELL et al., | O P I N I O N |
| Objectors and Respondents. | |

Appeal from an order of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

Serbin & Carmeli and Michele Carmeli for Petitioner and Appellant.

Chapman, Delesk & Emge, Holly M. Emge and Rebecca A. Allen for Objectors and Respondents.

\*          \*          \*

This action involves characterization and division of a piece of real property (Property) purchased by Robert and Wilma Marlene Baer (Marlene)[1] during their marriage but quitclaimed to Marlene as her separate property. After Marlene's death, petitioner and appellant Christine Baer-Smith, as Executrix of the Estate of Robert Baer[2] (petitioner), Robert's daughter from a prior marriage, filed a spousal property petition. She asked the court to confirm Robert's one-half community property interest in the Property (and other accounts not part of this appeal) based on community contributions to loan payments. Objectors and respondents Vern Shappell and William Shappell (objectors), Marlene's children from a prior marriage, filed an objection.

The court ruled quitclaiming of Property to Marlene was a valid transmutation and Robert should be reimbursed in the sum of just over $18,350 as his community property interest in the Property.

Petitioner appeals, arguing commingling of funds to make loan payments transmuted the Property to community property. Alternatively, if the Property was deemed separate, the court erred in how it calculated the amount due Robert.

We agree the community property loan payments did not transmute the Property to community property. Further, the court did not abuse its discretion in determining the reimbursement amount.

**FACTS**

Robert was 60 and Marlene was 43 when they were married in 1978. Marlene had suffered from polio contracted at age 18. Shortly after meeting Robert, Marlene was confined to a wheelchair where she remained for the balance of her life.

---

[1] We use first names for clarity, not out of disrespect.

[2] Robert was still living when the original petition was filed but died before the matter was tried.

In 1987 the parties purchased the Property for rental property, making a down payment of $22,000 and recording a deed of trust securing a note for $90,400, taking title as community property. In 1991 Robert executed and recorded a quitclaim deed to the Property to Marlene as her separate property. The value of the Property at that time was $155,000. Thereafter, Marlene transferred the Property into her separate property trust. Robert and Marlene referred to the Property as "Marlene's place" or "[Marlene's] Yorba Linda property."

In 2005 Marlene obtained a $229,350 line of credit loan, to be used for living expenses if needed, secured by the Property. Robert agreed to subordinate any interest in the Property he might acquire. The line of credit loan paid off the $90,400 purchase price.

In 2006 the line of credit loan was refinanced in the amount of $124,500. Robert signed the deed of trust as a "non-title borrower." (Capitalization omitted.)

In 2010 the line of credit loan was again refinanced in the amount of $122,082. Robert and Marlene both signed the note as borrowers.

In May 2012 on Marlene's death, the balance of the loan was just under $118,300. The value of the Property at that time was $255,000.

After trial the court ruled in favor of objectors. It found the Property was validly transmuted under Family Code section 852 (all further statutory references are to this code) by way of the quitclaim deed (Quitclaim Deed). The Quitclaim Deed unambiguously evidenced Robert's intention and "express declaration" to "forever transmute and give his interest and title in the [P]roperty" to Marlene. The court also found objectors' evidence as to the amount Robert should be reimbursed the most credible and credited him in the sum of $18,352.76 for his share of the community contribution.

## DISCUSSION

*1. Characterization of the Property*

At trial petitioner argued the Quitclaim Deed was not a valid transmutation of the Property to Marlene's separate property. On appeal she does not challenge the ruling the transmutation was valid but instead argues the Property should be recharacterized as community property based on commingled community funds to make loan payments.

To determine the parties' rights, the Property must be characterized as separate or community. (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 732.) There are generally three factors used to make that determination: "(1) the time of acquisition; (2) the 'operation of various presumptions, particularly those concerning the form of title': and (3) the determination 'whether the spouses have transmuted' the property in question, thereby changing its character." (*Ibid.*)

A fourth factor is sometimes employed: "whether the parties' actions short of formal transmutation have converted the property's character, as by commingling to the extent that tracing is impossible." (*In re Marriage of Rossin*, *supra*, 172 Cal.App.4th at p. 732.) Petitioner relies on this factor, arguing use of community funds to make loan payments constituted commingling such that the Property was retransmuted to community property.[3] We are not persuaded.

"'Section 852, subdivision (a), provides: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is

_____

[3] As an ancillary claim, petitioner asserts objectors failed to produce evidence of the amount of loan proceeds used for Property improvements and other purposes and to what extent the loan proceeds increased the value of the Property. But she provides no evidence there were any such improvements and or that the proceeds had any impact on the Property value. It is pure speculation that any improvements were made to the Property at all, much less using community funds.

adversely affected." Our Supreme Court has interpreted an "express declaration" as language expressly stating that a change in the characterization or ownership of the property is being made.'" (*In re Marriage of Holtemann* (2008) 166 Cal.App.4th 1166, 1172.)

In enacting section 850, the Legislature decided that to prove transmutation there must be a writing that contains an "express declaration." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 269-270; § 852, subd. (e).)

The "express declaration" changing the characterization of the property must be in the language of the document itself. Reference to other evidence is insufficient. (*Estate of MacDonald*, *supra*, 51 Cal.3d at pp. 271-272.) The court reasoned: "[This] effects the intent of the Legislature to create a writing requirement which enables courts to validate transmutations without resort to extrinsic evidence and, thus, without encouraging perjury and the proliferation of litigation." (*Id*. at p. 272.)

Here, there was no writing wherein Marlene expressly stated or agreed that she was transmuting the Property from separate back to community. In fact there is no evidence she wanted to retransmute the Property. Instead, once Robert quitclaimed the Property to her, she transferred it into her separate property trust. This was evidence she intended to keep it separate.

Moreover, there is no evidence Robert sought to have Marlene transmute the Property or believed she had done so. Robert and Marlene referred to the Property as Marlene's separate property. In addition, the record shows the parties knew how to transmute property. They previously did so when Robert quitclaimed the Property to Marlene. Had they wished to transmute it back to community, they could easily have had Marlene quitclaim it.

While factually not directly on point, *In re Marriage of Holtemann* (2008) 166 Cal.App.4th 1166, 1174 is illustrative. There a husband and wife executed a "'Spousal Property Transmutation Agreement'" and a trust. (*Id*. at pp. 1169-1170.) That

5

agreement spelled out the parties' intent was to state the character of the property and not in contemplation of a dissolution but solely for disposition on death. In the agreement, the husband transmuted his separate property to community property. When the parties later separated, husband argued the property should be treated as his separate property the agreement was solely for purposed of estate planning.

The court disagreed, explaining, "In any event, we are not aware of any authority for the proposition that a transmutation, once effected, can be limited in purpose or otherwise rendered conditional or temporary. Once the character of the property has been changed, a 'retransmutation' can be achieved only by an express agreement to that effect that independently satisfies the requirements of subdivision (a) of section 852." (*In re Marriage of Holtemann*, *supra*, 166 Cal.App.4th at p. 1174.) There was no such agreement in our case.

We reject petitioner's claim the burden was on objectors to prove the Property was separate. Her premise that the Property was community is false. Although there is a rebuttable presumption property acquired during marriage is community property (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 611), the Property was separate by virtue of the transmutation. Petitioner as the party challenging the characterization of the Property had the burden to overcome that presumption. (*Estate of Blair* (1988) 199 Cal.App.3d 161, 167 [presumption property is as shown in deed].) She failed to do so.

We are not persuaded by petitioner's reliance on *In re Marriage of Weaver* (2005) 127 Cal.App.4th 858 and *In re Marriage of Rico* (1992) 10 Cal.App.4th 706. Petitioner points to language in *Weaver* stating the property at issue was transmuted to community property based on commingling of the parties separate property used to pay for the mortgage and improvements during the marriage. (*In re Marriage of Weaver* at p. 871.) The court held section 852, requiring an express declaration of transmutation, did not apply due to that commingling. (*Ibid.*)

6

But the facts in *Weaver*, that justified the ruling, are completely different than ours. There, the husband and wife purchased the property before their marriage taking title as joint tenants, with the husband making the down payment from his separate property. During marriage, the parties used the property as their residence, made improvements, took out a second loan, and refinanced the property. In the dissolution action, the wife argued the husband should not be reimbursed for his down payment since the property was separate because it was purchased before marriage. (*In re Marriage of Weaver*, *supra*, 127 Cal.App.4th at p. 870.)

The court disagreed, instructing that "[u]nder section 2581, all property held in joint title by spouses during marriage is presumed to be community property upon dissolution, rebuttable only by written evidence to the contrary." (*In re Marriage of Weaver*, *supra*, 127 Cal.App.4th at p. 865.) It concluded "there was substantial evidence establishing that husband and wife's original separate property interest in the . . . residence, as joint tenants, became community property. As a consequence, the court appropriately reimbursed husband for the down payment." (*Id.* at p. 861.)

Our facts are not at all similar. Here, the Property was purchased during the marriage and was transmuted to Marlene's separate property during marriage. There was no underlying basis to characterize the Property as community and the evidence is clear the parties intended the Property be and remain separate. Moreover, there was never a marriage dissolution.

The *Weaver* court found its case factually similar to *In re Marriage of Rico*, *supra*, 10 Cal.App.4th 706. There the parties purchased a home as tenants in common before marriage, with both contributing separate property to the purchase price. After marriage they made mortgage payments with community funds and later refinanced the home, changing the title to joint tenancy. In the dissolution action the court found the change in title (§ 2581) raised the presumption the property was community property. (*In re Marriage of Rico*, at p. 710.)

7

The *Rico* facts are dissimilar to those here as well. The Property was never held as tenants in common or in joint tenancy. It was intentionally transmuted to separate property by the Quitclaim Deed. And, again, there was no dissolution action.

Based on the court's order finding a valid transmutation and petitioner's entitlement to payment of $18,000, we can infer the court found there had been no retransmutation based on use of commingled funds for loan payments. The court's finding as to the separate nature of the Property is supported by substantial evidence. (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1421 [finding of characterization of property reviewed for substantial evidence].)

*2. Reimbursement Amount*

At trial, objectors suggested three methods the court might use to determine the amount of Robert's community property reimbursement. Two were based on the *Moore*/*Marsden* formula. (*In re Marriage of Moore* (1980) 28 Cal.3d 366; *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426.) That formula generally provides that when community monies are used for mortgage payments on a spouse's separate property, the community obtains "'a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds.'" (*In re Marriage of Moore,* at p. 372

Petitioner asserts, as she did at trial, that among other reasons, use of this formula is unfair because it would give Robert a negative return. At trial objectors agreed *Moore*/*Marsden* does not apply because it concerns separate property brought into a marriage, where payments are then made with community funds. Objectors do not argue in their brief it should be applied. None of the parties provide any reason why we should consider it and hence we do not.

Objectors based their third alternative formula for calculation of Robert's share on section 2640, subdivision (b), which provides: "In the division of the community estate under this division, unless a party has made a written waiver of the

8

right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

Based on objector's calculations using this formula the court ordered Robert's estate was to be reimbursed approximately $18,350 for his community contribution pursuant to section 2640. Petitioner claims this was error because section 2640 does not apply to the facts in this case. She maintains it applies only to reimbursement for separate property contributions to acquisition of community property and not community property payments toward separate property.

The statute's language is as petitioner summarizes, but that is of no moment. "[W]hen the court concludes that property contains both separate and community interests, the court has very broad discretion to fashion an apportionment of interests that is equitable under the circumstances of the case." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 514.) Petitioner points to nothing in the record showing the court's determination was an abuse of discretion. In any event, we review the decision, not its rationale. And we affirm if the decision is correct on any ground. (*Jeffrey Kavin, Inc. v. Frye* (2012) 204 Cal.App.4th 35, 44.)

As an alternative argument, petitioner asserts that even if it was proper to use section 2640, the court misapplied it because it did not consider certain factors set out in section 2640, subdivision (a). This claim is no more persuasive. Under petitioner's argument, the statute did not directly apply so the court was not required to rely on any or all of it. As it stated, this was the best, and actually the only, method put in front of the court and it considered the resulting sum proper. We see no abuse of discretion.

9

As an alternative to the court's $18,000 award, petitioner argues the proper amount is approximately $68,350, which equals one-half the equity in the Property at the time of Marlene's death. This is the first time petitioner has suggested any appropriate amount, other than a one-half community property interest. And it is too late. Because this was not raised in the trial court this theory is forfeited. (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34 [party may not rely on new theory of relief or recovery on appeal].)

The value of Robert's interest is a factual question. We are not a fact-finding body; that is the province of the trial court. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 213.) Based on the evidence in front of it, the court found objectors' evidence that the proper amount was $18,350 "the most credible." That was a reasonable exercise of the court's discretion and equitable powers. There was no error.

## DISPOSITION

The order is affirmed. Objectors are entitled to costs on appeal.

THOMPSON, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

10