Filed 12/29/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ANNA and GRZEGORZ WOZNIAK. | D074813 |
| ANNA WOZNIAK, | |
| Appellant, | (Super. Ct. No. ED88158) |
| v. | |
| GRZEGORZ WOZNIAK, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge. Affirmed.

A. Stephen Rocha for Appellant.

Richard G. Prantil for Respondent.

I.

INTRODUCTION

This is an appeal from a judgment in a marital dissolution action between Anna and Grzegorz Wozniak.[1] Anna challenges the trial court's

---

[1] We will refer to the parties by their first names for purposes of clarity.

characterization of a particular residence as the parties' community property. The record demonstrates that the property was originally owned by Anna as her separate property, but that at some point prior to 2006, Anna transmuted this property into community property. In 2006, Grzegorz prepared and executed an interspousal transfer deed, which, if effective, would have passed his community property interest in the residence to Anna. At trial, the parties disputed Anna's response to Grzegorz's attempted delivery of the interspousal transfer deed; Grzegorz testified that Anna rejected the deed, and Anna testified that she was surprised when Grzegorz presented the executed deed to her but that she ultimately took possession of it. Over the next six years, the deed was not recorded and both parties appear to agree that it remained in the martial residence. In 2012, after an incident in which a protective order was granted in favor of Grzegorz and against Anna, Anna took possession of the deed and recorded it.

At the conclusion of the trial, the trial court stated in its findings that it found Grzegorz's testimony about the deed to be credible and concluded that Anna had rejected the deed in 2006, and that as a result, no transmutation had been consummated between the parties at that time. The court further found that when Anna recorded the deed in 2012, Grzegorz no longer had the intent to transmute his community property interest to Anna. The trial court ultimately concluded that the property at issue was community property.

On appeal, Anna contends that the trial court erred in concluding that this residence was community property. We conclude that the trial court did not err in its analysis of the law regarding the transmutation of property between spouses and that the court's findings are supported by substantial evidence. We therefore affirm the judgment.

2

II.

FACTUAL AND PROCEDURAL BACKGROUND

Anna and Grzegorz were married for just under 16 years prior to their separation and the dissolution of the marriage. Because the parties were unable to reach a settlement as to the division of their assets during their dissolution proceedings, they proceeded to trial on multiple issues pertaining to the division of their property. The trial took place over two days in June 2018.

The issues on appeal involve the trial court's characterization of real property located in La Mesa, California (the La Mesa property) as community property at the time of the parties' separation.[2]

Evidence presented at trial demonstrated that the La Mesa property had been Anna's separate property prior to the parties' marriage. However, at some point during the marriage, Anna converted title in the property to a joint tenancy with Grzegorz. According to Anna's trial testimony, she put Grzegorz on the title to the La Mesa property only for the purpose of refinancing a mortgage on that property.

At trial, there was a conflict in the testimony regarding what occurred after Grzegorz was placed on the title to the La Mesa property. According to Grzegorz, in 2006, he executed an interspousal transfer deed that would have transferred his community property interest in the La Mesa property to Anna, such that the La Mesa property would again be her separate property. According to Grzegorz, he prepared and executed the deed "in an attempt to put an end to the arguments and conflicts" between the parties. Grzegorz

---

2     Although this appeal involves questions related solely to the La Mesa property, the trial court ultimately determined the characterization and division of four parcels of real property.

further testified that when he attempted to give the interspousal transfer deed to Anna, she "was surprised and questioned the deed," and "outright and immediately rejected the deed."

Grzegorz also testified that "he was convinced that [Anna] did not want the inter-spousal transfer deed and was not going to record it" because, in part, "a few months after he offered [Anna] the inter-spousal transfer deed [she] told him that she wanted everything to be community property." According to Grzegorz, as a result of this conversation, he executed a deed in May 2007 adding Anna to the title of a property that had previously been his separate property.

Anna testified that she had been given a deed by Grzegorz in 2006 in which he "relinquish[ed] back all of [his] interest to [Anna] to the [La Mesa property] without her involvement [ ]or knowledge beforehand of his actions as to this deed." Grzegorz's presentation of the deed "surprised" her. Anna understood that Grzegorz had prepared the deed and presented it to her in order to "maintain the parties' pre-marital real properties as separate properties of the respective parties who acquired them originally." According to Anna, she "accepted and took possession of the deed in 2006 and maintained it in her belongings . . . ."

Both parties agree that it was not until 2012 that Anna recorded the interspousal transfer deed. Grzegorz testified that in April 2012, Anna perpetrated domestic violence against him, and he obtained a protective order against her. According to Grzegorz, during the time that this protective order was in place, Anna entered the family residence in violation of the protective order and took the deed. At some point in 2012, Anna recorded the deed. Anna conceded at trial that she did not record the deed until 2012, after she and Grzegorz had separated.

4

In setting forth its "Decision After Trial," the trial court made the following statements, findings and conclusions regarding the La Mesa property:

> "The [La Mesa] property was owned by petitioner[3] prior to marriage. During marriage it was converted to a joint tenancy and refinanced and respondent was placed on the deed. Thus, under Family Code Section 2581, the home is presumed community property unless petitioner can meet the rebuttal burden. *See, Rutter: California Practice Guide at Section 8:316.* The court finds the petitioner did not sustain her burden of proof to rebut the presumption during the trial. Petitioner did not submit evidence sufficient to sustain her burden of proof to show a traceable Family Code Section 2640 reimbursement for the separate property contribution to this community asset.
>
> "Respondent testified the community benefited from this refinance as the rate was lower. The best evidence of the value of the property is the Devlin appraisal of $570,000 from 2017. The property currently has a loan against it in the amount of $224,000 and a second in the amount of $52,178.
>
> "Considerable time during the trial was spent on the issue of respondent's re-conveyance of the property to petitioner. In 2006, respondent executed an inter-spousal transfer deed to petitioner. He testified she refused the deed at that time. She did not record it upon receipt. Six years later, petitioner was the perpetrator of domestic violence against respondent. She was arrested and a restraining order was issued. She thereafter recorded the deed from 2006.
>
> "The court finds that the petitioner has not overcome the presumption of undue influence for this transaction and moreover that a transmutation was not intended by the parties at the time of recordation and was not consummated in 2006. *In re Marriage of Haines*[ ] (1995)

---

3    Anna was the petitioner in the underlying proceeding.

33 C.A. 4th 277, 293. The court found the testimony of the respondent credible and the petitioner's testimony less than credible surrounding the circumstances of the alleged transmutation. As a result, the court finds that the attempted transmutation in 2006 was not consummated as the petitioner refused the deed. A transmutation may have been offered in 2006, but it was not accepted. Petitioner then recorded the rejected deed years later after perpetrating domestic violence against respondent at a time when there was no intent to effectuate a transmutation.

" . . . The [La Mesa] property is awarded to petitioner as her sole and separate property and the equalizing payment is discussed below. Petitioner shall use her best efforts to refinance the property or otherwise remove respondent from the current loan(s) secured by the property."

The court's "Decision After Trial" was entered on July 10, 2018, and constitutes the judgment in this case. Anna filed a timely notice of appeal on September 7, 2018.

III.

DISCUSSION

On appeal, Anna argues that the trial court erred in concluding that no valid transmutation of Grzegorz's interest in the La Mesa property occurred during the parties' marriage. According to Anna, Grzegorz's execution of the interspousal transfer deed in 2006 was sufficient, by itself, to effectuate a transmutation of Grzegorz's interest in the property, and the trial court should not have incorporated "gift law" into transmutation law by focusing on whether she had rejected or accepted the deed at the time it was offered. Effectively, Anna argues that the transmutation of one spouse's property interest to the other's spouse property interest "is a unilateral act completed by the one spouse transferring the interest to the other spouse." (Boldface &

6

capitalization omitted.) Anna further contends that there is insufficient evidence to support the trial court's finding that she did not overcome the presumption of undue influence that arises when one spouse transfers property to the other so that the recipient obtains an advantage over the other in the transaction (see Fam. Code, § 721, subd. (b)).

    1.  *Relevant legal standards*

        a.  *Ascertaining the characterization of property upon dissolution of a marriage*

The characterization of property involves " 'the process of classifying property as separate, community, or quasi-community.' [Citation.]" (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 91.) As a general rule, property that is acquired prior to marriage is the separate property of the acquiring spouse. (Fam. Code,[4] § 770, subd. (a)(1).) Conversely, all property acquired during marriage is presumptively community property. (§ 760; see *Ciprari*, *supra*, at p . 91 [there is a "basic presumption" that property acquired during marriage is community property].) However, "spouses may agree to change the status of any or all of their property through a property transmutation. [Citation.] A transmutation is an interspousal transaction or agreement that works a change in the character of the property." (*In re Marriage of Campbell* (1999) 74 Cal.App.4th 1058, 1062.) Section 850 sets forth the various transmutations that spouses may effectuate:

> "Subject to Sections 851 to 853, inclusive, married persons may by agreement or transfer, with or without consideration, do any of the following:
>
> "(a) Transmute community property to separate property of either spouse.

---

[4] Further statutory references are to the Family Code unless otherwise indicated.

"(b) Transmute separate property of either spouse to community property.

"(c) Transmute separate property of one spouse to separate property of the other spouse."

A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected. (§ 852.) As interpreted by courts, section 852, subdivision (a) requires "(1) a writing that satisfies the statute of frauds; and (2) an expression of intent to transfer a property interest." (*Estate of Bibb* (2001) 87 Cal.App.4th 461, 468 (*Bibb*); *In re Marriage of Holtemann* (2008) 166 Cal.App.4th 1166, 1172 (*Holtemann*).) Further, the "express declaration" language requires a writing that on its face coveys "a clear and unambiguous expression of intent to transfer an interest in the property," independent of extrinsic evidence. (*Bibb*, *supra*, at p. 468.) The writing must contain "language which expressly states that the characterization or ownership of the property is being changed." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272.)

Beyond the requirements of section 852, a transmutation of property between spouses must also comport with special rules pertaining to persons occupying a confidential relationship with one another. "[S]ection 721, subdivision (b) provides in part that 'in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.' In view of this fiduciary relationship, '[w]hen an interspousal transaction advantages one spouse, "[t]he law, from

8

considerations of public policy, presumes such transactions to have been induced by undue influence." ' [Citation.]" (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 84 (*Kieturakis*).) Thus, "the broad question whether a valid transmutation of property has taken place depends not only on compliance with the provisions of section 852 but also upon compliance with rules governing fiduciary relationships." (*In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 588–589.)

"The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations which are reviewed for substantial evidence. [Citation.]" (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572; see also *In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398 [trial court's determination that property is separate or community in character will be upheld on appeal if supported by sufficient evidence].) " '[T]he [trial] court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division. [Citations.]' " (*Campi, supra*, at p. 1572.) "However, when the resolution of the issue ' "requires a critical consideration, in a factual context, of legal principles and their underlying values," ' the issue is a mixed question of law and fact in which legal issues predominate, and de novo review applies." (*In re Marriage of Ruiz* (2011) 194 Cal.App.4th 348, 356, fn. 3.)

" 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881, italics omitted.) "In a substantial evidence challenge to a judgment, the

9

appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]' [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.) We give deference to the trial court's factual findings "because those courts generally are in a better position to evaluate and weigh the evidence. [Citation.]" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385.)

b. *General rules of statutory construction*

" 'Under well-established rules of statutory construction, we must ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.] '[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) "When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' " (*Ibid.*)

B. *Analysis*

1. *The trial court did not err in determining that no valid transmutation occurred in 2006*[5]

   a. *The trial court correctly concluded that acceptance of the deed is required to effectuate a valid transfer—and thus a valid transmutation—of one spouse's property interest to another*

Anna contends that the interspousal transfer deed that Grzegorz executed in 2006 satisfies the requirements of Family Code section 852, subdivisions (a) and (e), because it is a "writing" that demonstrated his "intent to transmute his interest in the real property" to Anna. (Boldface & capitalization omitted.) (See *Bibb*, *supra*, 87 Cal.App.4th at p. 468 [Section 852, subdivision (a) requires "(1) a writing that satisfies the statute of frauds; and (2) an expression of intent to transfer a property interest"].) Indeed, Grzegorz does not dispute that the interspousal transfer deed meets the requirements of the writing discussed in section 852, subdivision (a). However, while the existence of a writing that meets the requirements of section 852, subdivision (a) is one of the formalities necessary to effectuate the transmutation of spousal property, it is not, in and of itself, sufficient to establish that a valid transmutation has occurred. Rather, a court must

---

5 As an initial matter, although Anna raises the issue of the trial court's failure to engage in an assessment of whether Anna's initial transmutation of her separate property interest in the La Mesa property to community property prior to the events that transpired between 2006 and 2012 in her recitation of the facts underlying the appeal, Anna does not set forth any legal argument on this point. We therefore do not address the trial court's failure to consider whether undue influence was involved in the first interspousal transmutation of the La Mesa property from Anna's separate property to community property, and instead focus on the question raised by Anna on appeal—i.e., whether the trial court erred with respect to its characterization of the La Mesa property as community property.

make a finding, based on the evidence before it, that a valid transmutation has actually occurred under section 850, and that the transmutation was not the result of undue influence (see *In re Marriage of Bonds* (2000) 24 Cal.4th 1, 27).

In order to determine whether a valid transmutation has been transacted, we look to section 850, the statute that grants spouses the ability to transmute property during a marriage, to understand *how* spouses may change the characterization of their property during a marriage. That provision states in relevant part that "married persons may *by agreement or transfer*, with or without consideration" transmute their separate property to community property or the separate property of the other spouse, or transmute their community property interest to a separate property interest. It is thus clear that parties may transmute community property to one spouse's separate property by way of an "agreement" or by way of a "transfer."

Anna argues that the term "transfer" is intended to provide for the unilateral shifting of a property interest from one spouse to the other. According to Anna, because Grzegorz "chose[ ] the mechanism of [a] deed to transfer his interest in the real property," the transfer "was complete at the time he executed the deed" and "[n]o further act was necessary by wife for the trans[mutation] to be complete." She contends that "gift law [does] not apply" to spousal transmutations of property. Under Anna's proposed interpretation of the transmutation law, spouse A can, without the knowledge or consent of spouse B, transfer A's property interest to B merely by executing a document that meets the requirements of section 852, subdivision (a) (i.e., by executing a writing that evinces spouse A's intent to transfer a property interest to B). We are not convinced that this is the proper interpretation of section 850.

12

In interpreting section 850, it is clear that the terms "agreement" and "transfer" must have different meanings; if they did not have different meanings, the inclusion of both in the statute would render one of them surplusage. (See *People v. Franco* (2018) 6 Cal.5th 433, 437 [" ' "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word[s] surplusage" ' "].) However, this does not require that the term "transfer" be interpreted to mean a unilateral transfer in the absence of acceptance on the part of the transferee, as Anna suggests. Rather, the more reasonable interpretation of section 850 is that that statute's reference to an "agreement" is intended to refer to a situation in which both parties agree to certain terms, while the statute's reference to a "transfer" is intended to refer to a property transaction akin to the transfer of title that occurs pursuant to a writing evidencing a conveyance of title, such as a deed, which requires acceptance of the transfer of title by the grantee spouse in order for the transmutation to be effective.

For example, in *Holtemann, supra*, 166 Cal.App.4th at pp. 1172–1173, the spouses utilized an "agreement" to effectuate a transmutation of one spouse's separate property into community property. The writing at issue in that case was titled "Transmutation Agreement." In that document, one spouse agreed to "transmute[ ]" his separate property "to the community property of both parties," (italics omitted) while the other spouse " 'acknowledge[d] that the transmutation of Husband's separate property into community property' " (italics omitted) was "conditioned on [Wife's] agreement to refrain from amending, modifying or changing the Trust so that 'the property subject to [the] Agreement will pass as provided in said Declaration of Trust.' " (*Ibid.*) In other words, the wife promised not to

13

change the terms of the parties' trust in exchange for the husband's transmutation of separate property to community property.

In contrast to an agreement in which both parties agree to terms, a transfer or conveyance of real property requires merely that the party who is the intended recipient of the conveyance *accept* the title that the grantor is attempting to convey, often by way of symbolic acceptance of the transferring document. Indeed, "the essential requirements to convey real property [pursuant to a deed] under California law [are] as follows: '. . . To be effective, an instrument conveying real property must be written and must name a grantor and a grantee. It must be subscribed by the grantor or the grantor's agent, and it must be delivered to *and accepted by*, the grantee. These are the minimum requirements for a valid deed, and if they are all present, the deed is effective to transfer title to the grantee, but if one of the essential elements is missing, the deed is ineffective to transfer title.'" (*Carne v. Worthington* (2016) 246 Cal.App.4th 548, 558, italics added, quoting 3 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 8.3, pp. 8-18 to 8-19 (rel. 9/2015), fns. omitted (Miller & Starr).) It is a truism of the law that "[e]ven a deed by way of gift, though it imposes no obligation on the grantee other than those necessarily incident to ownership of land, requires an acceptance, *for the law does not force one to take title to real property against his or her will*." (26 Cal.Jur.3d Deeds, § 93 (italics added); see *Reina v. Erassarret* (1949) 90 Cal.App.2d 418, 426.) It is thus apparent that in the typical transfer of property by deed, "acceptance by the grantee is necessary to make a delivery effective and the deed operative." (*Perry v. Wallner* (1962) 206 Cal.App.2d 218, 222 (*Perry*).)

Anna's proposed interpretation of section 850 would eliminate the need for an acceptance in interspousal transfers by way of a deed or similar

14

method of conveying title to real property.  However, Anna has offered no reason why a different rule should apply to interspousal transfers, and we can discern none.  Specifically, we see no reason why a "transfer" utilized to effectuate a transmutation of the characterization of property between spouses should be interpreted in such a way as to grant a spouse unilateral authority to transfer an interest in real property—a power that would be greater than the power of any other donor to transfer property by way of a deed or similar conveyance instrument.  It is clear that with respect to gifts of both real and personal property, generally, a donee's acceptance of a gift is essential for the completion of that gift.  (See 35 Cal.Jur.3d Gifts, § 15, 26 Cal.Jur.3d Deeds, § 93.)  Further, it would make little sense to interpret section 850 to deny a spouse the right to refuse to accept a gift of the other spouse's property interest.  Indeed, we can envision a scenario in which one spouse might utilize a unilateral power to transmute a highly encumbered separate property interest into the separate property interest of his or her spouse on the eve of separation by simply executing a conveyance document and having it recorded.  We cannot conclude that the Legislature would have intended the transmutation statute to allow for such results.  We therefore decline to interpret section 850's reference to a transmutation completed by "transfer" to permit the *unilateral* transfer of property from one spouse to the other in the absence of acceptance by the transferee spouse.  Rather, we conclude that acceptance of the property interest by the transferee spouse is required in order for a valid transmutation to be effectuated between spouses.

b. *The trial court's factual finding regarding Anna's lack of acceptance in 2006 is supported by substantial evidence*

Because we conclude that the trial court properly considered whether Anna accepted the interspousal transfer deed in determining whether a valid transmutation took place in 2006, we next consider whether the court's finding that Anna did not accept the interspousal transfer deed, and instead rejected it, is supported by substantial evidence. "Whether [a] deed was accepted by the grantee so as to complete a transfer of title to him is likewise a question of fact for the trial court." (*Perry*, *supra*, 206 Cal.App.2d at p. 222.)

There can be no question that substantial evidence supports the trial court's finding that Anna did not accept the interspousal transfer deed in 2006. Grzegorz testified that Anna rejected the deed and stated that she wanted the La Mesa property, as well as the parties' other properties, to remain community property. The court expressly found Grzegorz's testimony on this point to be more credible than Anna's testimony. It is clear that the testimony of a single witness can provide the substantial evidence necessary to support a finding of fact. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [the testimony of a single witness, and even the testimony of a party, is sufficient to provide substantial evidence of a factual finding].) The trial court's finding that Anna did not accept the deed in 2006 is sufficient to support its conclusion that the interspousal transfer deed was ineffective to transmute Grzegorz's community property interest into Anna's separate property in 2006.

2. *The trial court's implicit factual finding that there was no redelivery of the 2006 deed between the time it was rejected and the time Anna recorded it in 2012 is supported by substantial evidence*

Given the failure of Grzegorz's attempted transfer of his community property interest in the La Mesa property in 2006, we see no error in the court's further conclusion that Anna's recordation of the ineffectual deed in 2012 did not effectuate a property transmutation as between these parties.

When delivery fails because of the rejection of a deed, and in the absence of any indication that the intent to pass the property continues, there is no basis for concluding that the grantor's intent to pass the property remains in effect until the time the grantee decides to accept the previously rejected deed. A deed becomes ineffective to transfer title upon its rejection. (See *Carne, supra,* 246 Cal.App.4th at p. 558 [" 'if one of the essential elements' of a valid deed is missing, 'the deed is ineffective to transfer title' "]; see also 3 Miller & Starr, Cal. Real Estate (4th ed. 2020) § 8:49 ["A deed does not transfer title unless it is accepted by the grantee"].) Indeed, the rejection of a transferring instrument acts to close the act of delivery. (See 26A C.J.S., Deeds, § 91 [a "grantee may accept the deed at any time" up "*until the grantee rejects the transfer*" (italics added)].) Anna's rejection of the deed at the time Grzegorz attempted to deliver it to her in 2006 thus rendered the deed ineffective to transfer title. Therefore, a renewed delivery and acceptance of the interspousal transfer deed would have been required in order for a transmutation to be effectuated.

Whether Grzegorz redelivered the deed to Anna after her initial rejection of the deed is a question of fact. (See *Rothney v. Rothney* (1940) 41 Cal.App.2d 566, 570 ["Delivery is a question of fact which is to be determined from the circumstances surrounding the particular transaction"].) " 'Delivery is a question of intent.' " (*Luna v. Brownell* (2010) 185

17

Cal.App.4th 668, 673, quoting *Osborn v. Osborn* (1954) 42 Cal.2d 358, 363.) "The intention to pass immediate and irrevocable title to the property interest is the essential fact for consideration. . . . [Moreover,] there is a vital distinction between the use of the term delivery, which might simply designate the mere transfer of physical custody or possession of the deed, and the use of the term in legal contemplation as constituting the necessary delivery required for 'execution' of a deed." (*Rothney*, *supra*, at p. 570.)

The trial court found that in 2012, when Anna recorded the deed that she had previously rejected, Grzegorz did not have the intent to pass title to his community property interest in the La Mesa property to Anna. Further, given that the court found that the La Mesa property was community property and that Grzegorz's did not transmute his community property interest into Anna's separate property, the court also implicitly found that after Anna's rejection of the deed in 2006, Grzegorz did not redeliver the deed to Anna at any time prior to her recording the deed.

The trial court's implicit finding that Grzegorz did not redeliver the deed to Anna during the intervening time between Anna's 2006 rejection of the deed and her recording of the deed in 2012, and the court's express finding that Grzegorz did not have the requisite intent to transfer his property interest to Anna when she recorded the deed in 2012, are supported by substantial evidence. According to Grzegorz, after Anna rejected the deed in 2006, she told Grzegorz that she wanted all of the parties' property to be held as community property. As a result, in 2007, Grzegorz executed a deed adding Anna to the title to a property that had been his separate property prior to the marriage, thereby transmuting his separate property into community property. Grzegorz further testified that when Anna entered the family residence in 2012 and took the deed, she did so in violation of the

18

protective order that was in place. There was no testimony from either party that there had ever again been a discussion between the parties regarding the characterization of the La Mesa property after Grzegorz added Anna to the title to a property that he had separately owned prior to the marriage. Thus, from the evidence presented at trial, the trial court could have reasonably concluded that upon Anna's rejection of the 2006 deed, Grzegorz's intention was to continue to possess the La Mesa property, as well as the other properties owned by the parties, as community property. The court could further have reasonably concluded that Grzegorz at no point redelivered the deed to Anna and that he had no intention to pass his community property interest in the La Mesa property to Anna after his first attempt to deliver the 2006 deed. The fact that Anna presumably had access to the deed between 2006 and 2012 does not require a finding that Grzegorz had the intent to pass title to Anna after she rejected the deed in 2006: "Because delivery is predicated on the grantor's intent to vest title immediately in the grantee, when the evidence indicates that the grantor did not have the necessary intent, the mere possession of the deed by the grantee, by itself, is not a sufficient proof of such intent, even when title has been conveyed to a bona fide purchaser. When there is doubt, the court considers all of the facts and events surrounding the transaction and the grantor's acts and declarations before, at, and after the time the deed is executed." (3 Miller & Starr, Cal. Real Estate (4th ed. 2020) § 8:44.)

Anna puts forth an argument that Grzegorz's attempted delivery of the deed to her in 2006 constituted an "offer" to transmute the property, and that this "offer" should have been considered to have remained open for her to accept at any point in time by recording the deed. Putting aside the question whether an interspousal transmutation of property by transfer involves an

19

"offer," as opposed to "delivery" of the document evidencing the intent to transfer title to the other spouse under relevant property law, even under the contract law principles that Anna suggests, an "offer" does not remain open after a rejection of the offer in the absence of some indication that the offeror intends for it to remain open. (See, e.g., Rest.2d Contracts, § 38 ["An offeree's power of acceptance is terminated by his rejection of the offer, unless the offeror has manifested a contrary intention"].) There is no evidence that Grzegorz intended to leave open the possibility that Anna could change her mind after refusing to accept the deed upon its initial delivery. Thus, contract law concepts pertaining to offer and acceptance do not alter our conclusion concerning the effect of Anna's rejection of the interspousal transfer deed in 2006.

3. *There is no need to consider the question whether the presumption of undue influence was overcome because no effective transfer of Grzegorz's community property interest to Anna was effectuated*

The trial court made a specific finding that Anna had not "overcome the presumption of undue influence for this transaction." Anna spends a good portion of her briefing on appeal arguing that the "undisputed facts rebut the presumption of undue influence as wife played no role in the creation or execution of the deed and husband was fully aware of the consequences of his actions." (Boldface & capitalization omitted.)

As noted, a transmutation of property between spouses must comport with the formalities of section 852 before it may be found to have been effective, and must also comport with special rules pertaining to persons occupying a confidential relationship with one another, as provided in section 721, subdivision (b). In view of section 721, subdivision (b) and the confidential relationship that exists between spouses, " '[w]hen an

20

interspousal transaction advantages one spouse, "[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence." ' [Citation.]" (*Kieturakis*, *supra*, 138 Cal.App.4th at p. 84.) Therefore a presumption of inducement by undue influence under section 721, subdivision (b) "is regularly applied in marital transactions in which one spouse has deeded property to the other . . . . In such cases, it is evident one spouse has obtained an advantage—the deeded property—from the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.)

However, it is clear that the presumption of undue influence arises only where an otherwise effective transmutation transaction between spouses has occurred. There is no need to apply the presumption of undue influence or to consider whether undue influence was present in the inducement of a transaction between spouses where no effective transaction amounting to a transmutation has occurred. The trial court concluded that no valid transfer of Grzegorz's community property interest in the La Mesa property to Anna was effected. There was thus no need for the court to consider whether the presumption of undue influence had or had not been rebutted. Because we may affirm the trial court's judgment on the ground that the court properly concluded that no effective transmutation of Grzegorz's community property interest to Anna's separate property interest occurred, we need not consider Anna's contentions regarding the court's finding that she had failed to overcome the presumption of undue influence.

IV.

DISPOSITION

The judgment of the trial court is affirmed.  Grzegorz is entitled to costs on appeal.

AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.