[No. B178371. Second Dist., Div. Six. May 18, 2005.]

In re the Marriage of CHRISTINE and CHRISTOPHER STARKMAN.
CHRISTINE STARKMAN, Appellant, v.
CHRISTOPHER STARKMAN, Respondent.

COUNSEL

Ferguson, Case, Orr, Paterson & Cunningham, Gregory W. Herring and Sandra M. Robertson for Appellant.

Bernard N. Wolf and Daniel L. Helbert for Respondent.

OPINION

**GILBERT, P. J.**—As part of their estate plan a husband and wife establish a revocable trust into which husband transfers all of his separate property. A paragraph in the trust agreement provides that the property transferred to the trust is community property unless husband or wife as transferor identifies it as separate property. Husband does not so identify the property.

Here we hold that the clause is insufficient to create a transmutation of husband's separate property to community property.

Christine Starkman appeals an interlocutory judgment entered in favor of her former husband, Christopher Starkman, regarding asserted transmutation and characterization of property that was conveyed to the parties' revocable trust.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

Christine and Christopher married on October 6, 1990, and have two minor children. They separated on October 1, 2003; Christine later filed a petition to dissolve their 13-year marriage.

Christopher is an heir to the United Parcel Service fortune, and he possesses substantial separate property assets. During the marriage, neither Christopher nor Christine was employed. Christopher supported the family with earnings from his separate property investments, primarily stock dividends.

In 1996, after the birth of his daughter, Christopher consulted with and employed attorney Warren Sinsheimer to prepare an estate plan. Among other instruments, Sinsheimer drafted a revocable declaration of trust, entitled "The Starkman Family Revocable Trust" (Trust). Christopher and Christine executed the 32-page Trust and related estate planning instruments on January 28, 1997.

---

[1] We refer to the parties as "Christine" and "Christopher" not from disrespect, but to ease the reader's task.

## *Relevant Trust and General Assignment Provisions*

Paragraph 1.01 of the Trust states that the parties settled the Trust "to simplify their affairs as well as update their estate plan and assure its efficient operation." It also provides that the Trust's purposes are "to avoid probate and provide for the orderly administration of the Settlors' property in the event of the death or incapacity of either Settlor."

Paragraph 2.02 states that the Settlors intend "to transfer all their assets to the Trust Estate, to the greatest possible extent."

The heart of this appeal is Trust paragraph 2.03. It provides that the "Settlors agree that any property transferred by either of them to the Trust . . . is the community property of both of them unless such property is identified as the separate property of either Settlor. If either Settlor claims that a portion of the Trust Estate is separate property, the Settlor making such a claim agrees to indemnify the Trust and the Trustee from all costs and liability incurred in establishing or defending such claim." It also states that "Settlors declare that any community property transferred to the Trust shall retain its character as such, notwithstanding the transfer to the Trust."

Contemporaneously with execution of the Trust, Christopher and Christine executed a "General Assignment." The General Assignment conveyed "any asset, whether real, personal, or mixed . . . [they] now own or which we may own in the future" to the Trust. Moreover, and of central importance to the appeal, the General Assignment did not specifically exclude any property that Christopher intended to remain as his separate property.

One month after execution of the Trust and General Assignment, Sinsheimer wrote the parties and enclosed copies of the estate plan instruments. The letter advised in part that "the Trust provides that there is a presumption that all trust assets are your community property unless you clearly specify otherwise. Therefore, *it is very important that separate property be clearly identified as such.*" (Italics in original.)

Christopher later executed various stock brokerage transfer forms to convey specific assets into the Trust. Each form designates the assets to be held by Christopher and Christine as trustees of the Trust. The forms do not describe the assets as either community property or separate property.

Following the parties' separation, Christopher exercised his right to revoke the Trust, pursuant to its terms. Christine asserted that the assets that Christopher conveyed to the Trust by the stock brokerage forms, however, had been transmuted into community property.

Following a separate trial concerning characterization, the court decided that Christopher did not transmute his separate property assets by conveying them to the Trust. The court described paragraph 2.03 of the Trust as "a vacuum cleaner," and insufficient to transform Christopher's separate property into community property. It concluded that Christopher did not state "any express declaration of transmutation" in the stock brokerage transfer forms or in any "document at all." The court decided that Christopher was entitled to the return of his separate property contributed to the Trust.

The trial court entered judgment in favor of Christopher, and it certified the interlocutory judgment for an immediate appeal. (Fam. Code, § 2025; Cal. Rules of Court, rule 5.180(d).)[2] Christine appeals and contends that the Trust, General Assignment, and stock brokerage transfer forms, taken together, satisfy the requirements of section 852 concerning transmutation of property. Pursuant to section 2025 and rule 5.180, subdivision (d), we have granted Christine's motion to appeal the issue of asserted transmutation and characterization of property.

## DISCUSSION

Christine contends that the Trust, General Assignment, and stock brokerage transfer forms, taken together, establish Christopher's express intent to change ownership of his separate property into community property, by agreement. (§§ 850–853; *Estate of MacDonald* (1990) 51 Cal.3d 262, 272–273 [272 Cal.Rptr. 153, 794 P.2d 911] [transmutation requires language that expressly states that characterization or ownership of property is being changed]; *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 593 [81 Cal.Rptr.2d 726] [proof of transmutation "not difficult to meet"—it requires only "a clear demonstration of a change in ownership or characterization of property"].) She points out that the Trust states that any property transferred to it is community property "unless such property is identified as the separate property of either Settlor." Christine adds that Civil Code section 1642 provides that agreements relating to the same matters, between the same parties, and made as parts of "substantially one transaction," are to be taken together. (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 412–413 [5 Cal.Rptr. 367] [instruments executed contemporaneously, with reference to each other, and for the same purpose, must be construed together].) She criticizes the trial court's emphasis on the conveying documents (stock brokerage forms), instead of the General Assignment and paragraph 2.03 of the Trust.

■ Section 850, subdivision (b), provides that married persons may transmute the separate property of either spouse into community property "by

---

[2] All further statutory references are to the Family Code unless stated otherwise.

agreement or transfer," subject to the provisions of sections 851 to 853. Section 852, subdivision (a), provides: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." Our Supreme Court has interpreted an "express declaration" as language expressly stating that a change in the characterization or ownership of the property is being made. (*Estate of MacDonald, supra*, 51 Cal.3d 262, 272.) ■ "[A] writing signed by the adversely affected spouse is not an 'express declaration' for the purposes of [Civil Code] section 5110.730 (a) [now Fam. Code, § 852, subd. (a)] *unless* it contains language which expressly states that the characterization or ownership of the property is being changed." (*Ibid.*)

■ An "express declaration" does not require use of the terms "transmutation," "community property," "separate property," or a particular locution. (*Estate of MacDonald, supra*, 51 Cal.3d 262, 273.) For example, the language "I give to the account holder any interest I have in the funds deposited in this account," is sufficient to establish transmutation. (*Ibid.*) The express declaration must unambiguously indicate a change in character or ownership of property. (*In re Marriage of Koester* (1999) 73 Cal.App.4th 1032, 1037, fn. 5 [87 Cal.Rptr.2d 76].) A party does not "slip into a transmutation by accident." (*Ibid.*)

■ In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence. (*Estate of MacDonald, supra*, 51 Cal.3d 262, 271–272; *In re Marriage of Barneson, supra*, 69 Cal.App.4th 583, 588 [interpretation of written documents subject to independent review].) Under the circumstances, we are not bound by the interpretation given to the written instruments by the trial court. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) We exercise our independent judgment and decide that the estate plan instruments and stock brokerage transfer forms together do not establish a transmutation of Christopher's separate property into community property. In making our decision, we agree with Christine that the Trust and General Assignment are the most important instruments to consider; the stock brokerage transfer forms are of lesser importance to the questions presented here.

The Trust's purposes are "to avoid probate and provide for the orderly administration of the Settlors' property in the event of the death or incapacity of either Settlor." The Trust also appears to concern and perhaps allow for income tax basis benefits for community property upon the death of a settlor. (Int. Rev. Code, § 1014.) Its purpose is not an agreement between Christine and Christopher to transmute the entirety of Christopher's substantial separate

property assets into community property. Neither the sentence in paragraph 2.03 upon which Christine relies, nor the conveyance to the Trust effected by the General Assignment (conveyance of "any asset, whether real, personal, or mixed . . . now own[ed] or . . . own[ed] in the future" to the Trust), unambiguously establishes that Christopher was effecting a change of ownership in the entirety of his significant separate estate. (*Estate of MacDonald, supra,* 51 Cal.3d 262, 271–272 [statement of general rule regarding proof of transmutation].) For example, the parties might have stated in paragraph 2.03 that any property transferred to the Trust by either of them "becomes" or "is changed into" the community property of the parties. The Trust purposes set forth in paragraph 1.01 might have included as a purpose that Christopher was transmuting the entirety of his separate estate to community property.

Moreover, other Trust provisions appear to support our interpretation. Paragraph 3.02, for example, requires the trustee to pay the net income of separate property to the contributing settlor for his maintenance and support. In the event the net income is insufficient for those purposes, the trustee is required to invade "the principal of said Settlor's separate property." A reasonable inference from this language is that separate property retains its separate property characterization.

We do not consider the letter sent by attorney Sinsheimer warning "that separate property be clearly identified as such" as bearing upon any asserted transmutation. It is inadmissible extrinsic evidence. (*Estate of MacDonald, supra,* 51 Cal.3d 262, 271–272.) Moreover, the warning letter was sent to the parties nearly one month following Christopher's execution of the General Assignment which had already transferred to the Trust all property that he owned or would own in the future.

Christine and Christopher argue the factual circumstances of *Estate of MacDonald, supra,* 51 Cal.3d 262 [did spouse effect transmutation of community property by signing bank IRA adoption form?], and *In re Marriage of Barneson, supra,* 69 Cal.App.4th 583 [did spouse effect transmutation of separate property by instructing his stockbroker in writing to "transfer" stock to his wife?]. The factual situation here is different, however, and we rely upon those decisions only for a general discussion of the law concerning transmutations.

We reject Christine's interpretation of the estate planning instruments, although her position is not unreasonable. To the extent that she argues that Christopher has breached a fiduciary duty to her by disputing the characterization or asserted transmutation of the property, we believe this begs the question whether transmutation occurred pursuant to established law. Christine also asserts that Christopher's contentions would not allow a stepped-up

income tax basis under federal tax law. Whether this is correct or not is beside the point. Whatever the answer to that question, our decision does not create havoc in estate planning as Christine asserts. Here we decide only the sufficiency of language to expressly transmute separate property to community property.

The judgment is affirmed. Appellant to bear costs on appeal.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied June 15, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 10, 2005. Werdegar, J., did not participate therein.