76 Cal.Rptr.3d 615 (2003)
162 Cal.App.4th 1175
In re MARRIAGE OF Barbara and Frank Gordon HOLTEMANN.
Barbara Holtemann, Respondent,
v.
Frank Gordon Holtemann, Appellant.
No. B203089.
Court of Appeal of California, Second District, Division Six.
May 12, 2008.
*617 Law Offices of Bernard N. Wolf, Bernard N. Wolf, San Francisco, Ginny A. Browne, Pismo Beach, for Appellant.
Robert H. Mott, San Luis Obispo, for Respondent.
*616 PERREN, J.
In In re Marriage of Starkman (2005) 129 Cal.App.4th 659, 28 Cal.Rptr.3d 639, we concluded that merely characterizing separate property transferred to a trust as "community property" is insufficient to effectuate a transmutation of the property in the absence of "`... language which expressly states that the characterization or ownership of the property is being changed.'" (Id., at p. 664, 28 Cal.Rptr.3d 639, quoting Estate of MacDonald (1990) 51 Cal.3d 262, 272, 272 Cal.Rptr.' 153, 794 P.2d 911.) Here we find such a clear expression and, notwithstanding language that purports to qualify, limit or condition the transfer, we conclude that a transmutation of separate property to community property was effected.
Frank Gordon Holtemann appeals from a bifurcated order issued in favor of his former wife, Barbara Holtemann, regarding the legal effect of a spousal property transmutation agreement executed during the marriage. Frank[1] contends the family law court erred in finding that the agreement contained an "express declaration" sufficient to transmute his separate property into community property, as contemplated by Family Code section 852, subdivision (a). We conclude otherwise and affirm.

FACTS AND PROCEDURAL HISTORY

The Parties And Their Solicitation Of The Agreement
Frank and Barbara were married on June 21, 2003, and separated on June 2, 2006. The parties had no children together, although each has adult children from prior marriages.
When the parties were married, Frank had considerable assets while Barbara had few. The parties jointly retained attorney Joseph Look to prepare estate planning documents that would eliminate the need for probate and minimize taxes in the event of Frank's death. On March 10, 2005, the parties executed a document entitled "Spousal Property Transmutation Agreement" (the Transmutation Agreement) and another entitled "Holtemann Community Property Trust" (the Trust). An introductory provision in the Transmutation Agreement states that "[t]he parties, are entering into this agreement in order to specify the character of their property interests pursuant to the applicable provisions of the California Family Code. This agreement is not made in contemplation of a separation or marital dissolution and is made solely for the purpose of interpreting how property shall be disposed of on the deaths of the parties." The parties also acknowledged that Look had explained the "legal consequences" of the agreement, and that they had decided not to retain *618 separate counsel after being advised of the advantages of doing so.

The Transmutation Agreement
Article 2.1 of the Transmutation Agreement states as follows: "Transmutation of Husband's Separate Property to Community Property. Husband agrees that the character of the property described in Exhibit A (including any future rents, issues, profits, and proceeds of that property) is hereby transmuted from his separate property to the community property of both parties. Exhibit A is attached to and made part of this agreement." Exhibit A, which is identified as both "Husband's Separate Property Being Transmuted to Community Property" and a "List of Community Property," lists a total of eight items of property, including the spouses' residence in Nipomo as well as stock portfolios and land, building and gas well partnership interests identifying the "Frank G. Holtemann 1996 Trust" as the owner. Article 2.3 further provides that "[concurrently herewith, Husband and Wife have entered into a Declaration of Trust for the Holtemann Community Property Trust; it being the intention of the parties that the property transmuted by Husband hereunder shall be transferred and assigned into such Trust. Wife acknowledges that the transmutation of Husband's separate property into community property herewith was undertaken upon the express condition that the disposition of the trust estate of said Trust, upon the death of Husband and of Wife, as provided for in said Declaration of Trust, dated March 10, 2005, shall remain in effect, and not be amended, modified or changed by Wife, so that upon the death of the parties, the property subject to this Agreement will pass as provided in said Declaration of Trust. The parties further acknowledge that, but for such agreed disposition of the subject property, settlor Frank Holtemann would not have effected the within transmutation of his separate property into community property. Wife agrees not to amend, modify or change the dispositive provisions of any of the trusts established pursuant to said Declaration of Trust without Husband's prior written consent and agreement."

The Trust
Article 1.3 of the Trust provides: "Statement of Intent. This is a joint trust established by the settlors in order to hold community property of the settlors, which community property was created by the transmutation of separate property of settlor Frank G. Holtemann concurrently with the execution of this trust instrument. The parties each acknowledge that the transmutation of Frank Holtemann's separate property into community property was undertaken upon the condition of and with this trust instrument in mind, in particular with the disposition of the trust estate upon the death of the settlors as provided for herein in mind; and but for such agreed disposition, settlor Frank Holtemann would not have effected the transmutation of his separate property into community property, with which this trust was funded." Article 2.2, entitled "Character of Trust Assets," provides that "[a]ll community property of the settlors transferred to this trust, and the proceeds of all such property, shall continue to be community property under the laws of California, subject to the provisions of this instrument. All separate and quasi-community property shall remain the separate or quasi-community property, respectively, of the contributing settlor."
The Trust further states that "[d]uring the joint lifetimes of the settlors, any trust created by this instrument may be revoked or terminated, in whole or in part, by either settlor as to any separate or quasicommunity property of that settlor and *619 any community property of the settlors." The Trust also states that "[u]nless otherwise provided in the revocation or this trust instrument, any community property so returned shall continue to be the community property of the settlors." (Italics added.)

The Proceedings
Barbara filed a petition to dissolve the marriage on August 1, 2006. On October 19, 2006, Frank issued notice that he had exercised his right to revoke the Trust. The parties subsequently stipulated to bifurcate the trial to determine the validity of the Transmutation Agreement. The trial court subsequently found that under the express terms of the Transmutation Agreement, Frank had transmuted his separate property identified in exhibit A to community property. In addition, the court ordered Frank to pay $13,000 to Barbara's attorney for the purpose of retaining experts to value the community property identified in exhibit A to the Transmutation Agreement.
The court issued a certificate of probable cause certifying the order for interlocutory review, and we subsequently granted Frank's motion for leave to appeal the order. (Fam.Code, § 2025; Cal. Rules of Court, rules 5.180(d) & (f).)

DISCUSSION
Frank contends that the Transmutation Agreement and the Trust are insufficient to establish his express intent to transmute his separate property identified in exhibit A to community property, as contemplated by Family Code section 852, subdivision (d). According to Frank, his intent in this regard was rendered ambiguous by language in both documents indicating that they were executed solely for estate planning purposes. We disagree.
"Section 850, subdivision (b), provides that married persons may transmute the separate property of either spouse into community property `by agreement or transfer,' subject to the provisions of sections 851 to 853. Section 852, subdivision (a), provides: `A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' Our Supreme Court has interpreted `an express declaration' as language expressly stating that a change in the characterization or ownership of the property is being made. (Estate of MacDonald, supra, 51 Cal.3d at p. 272[, 272 Cal.Rptr. 153, 794 P.2d 911].) `[A] writing signed by the adversely affected spouse is not an "express declaration" for the purposes of [Civil Code] section 5110.730(a) [now Fam.Code, § 852, subd. (a) ] unless it contains language which expressly states that the characterization or ownership of the property is being changed.' [Citation.]" (In re Marriage of Starkman, supra, 129 Cal.App.4th at pp. 663-664, 28 Cal.Rptr.3d 639.) "The express declaration must unambiguously indicate a change in character or ownership of property. [Citation.]" (Id., at p. 664, 28 Cal.Rptr.3d 639.)
"In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence. [Citations.]" (In re Marriage of Starkman, supra, 129 Cal. App.4th at p. 664, 28 Cal.Rptr.3d 639.) The Transmutation Agreement and Trust at issue in this case establish that Frank intended to, and did, transmute from separate to community property that which was identified in the incorporated exhibit. The Transmutation unambiguously states that "Husband agrees that the character of the property described in Exhibit A (including *620 any future rents, issues, profits, and proceeds of that property) is hereby transmuted from his separate property to the community property of both parties" (Italics added.) The attached Exhibit A is later expressly identified as "Husband's Separate Property Being Transmuted to Community Property." In referencing the Trust, the Transmutation Agreement states it is "the intention of the parties that the property transmitted by Husband hereunder shall be transferred and assigned into such Trust." (Italics added.) It also states that "Wife acknowledges that the transmutation of Husband's separate property into community property herewith " is conditioned on her agreement to refrain from amending, modifying or changing the Trust so that "the property subject to this Agreement will pass as provided in said Declaration of Trust. (Italics added.) The parties further acknowledge that, but for such agreed disposition of the subject property, settlor Frank Holtemann would not have effected the within transmutation of his separate property into community property." (Italics added.) The Trust similarly provides that it was created "in order to hold community property of the settlors, which community property was created by the transmutation of separate property of settlor Frank G. Holtemann concurrently with the execution of this trust instrument." (Italics added.) As the trial court aptly noted, "[a] clearer statement of a transmutation is difficult to imagine."
Finding an express declaration of transmutation does not even require that one use the terms "transmutation," "community property," or "separate property." (In re Marriage of Starkman, supra, 129 Cal.App.4th at p. 664, 28 Cal.Rptr.3d 639.) Unlike Starkman, in which the term "transmutation" is never used, here it is used repeatedly and pointedly. There can be no doubt that, with the advice of counsel, the parties chose this unique and specific term of art.
Frank nevertheless contends that these repeated, express declarations of transmutation were rendered ambiguous by the statement in the Transmutation Agreement that "[t]his agreement is not made in contemplation of a separation or marital dissolution and is made solely for the purpose of interpreting how property shall be disposed of on the deaths of the parties," as well as statements in both documents reflecting the parties' agreement that Frank would not have transmuted his separate property had Barbara not agreed to refrain from exercising her right to amend, modify or change it. According to Frank, "[t]hese provisions negate any legally-mandated conclusion that the [Transmutation] Agreement established the requisite, `unambiguous' proof of a transmutation in this marital dissolution action, prior to the parties' deaths." We are not persuaded. Regardless of the motivations underlying the documents, they contain the requisite express, unequivocal declarations of transmutation. Moreover, the documents reflect that Frank was fully informed of the legal consequences of his actions. Nothing in the record indicates that he was misinformed or misled. Under the circumstances, Frank will not be heard to complain that his express declaration of transmutation was unknowing or that he "`slip[ped] into a transmutation by accident.' [Citation.]" (In re Marriage of Starkman, supra, 129 Cal.App.4th at p. 664, 28 Cal.Rptr.3d 639.)
Frank also urges us to treat his express declarations of transmutation differently from other express declarations because he did not have his own attorney. He asserts that "[s]ince Mr. Look represented both parties in the estate plan, he should have added an express disclaimer, to the *621 effect that the transmutation would be inoperative on marital dissolution." As we have already noted, however, Frank was fully advised of the consequences in failing to secure separate counsel, yet chose to proceed.
In any event, we are not aware of any authority for the proposition that a transmutation can be conditional or temporary. As the trial judge stated: "Husband argues that the transmutation was limited to estate purposes only. In other words, Frank wishes to have his cake and eat it too. He argues that, in the event of either his or Barbara's death, the survivor would be able to use the Transmutation Agreement to claim the property as community property, thus obtaining a full step up in basis to the fair market value of the property at date of death, while at the same time denying the validity of the Transmutation Agreement as an instrument which created community property. Thus, when it would benefit either Frank or his estate, Frank wishes to characterize the property as community. However, when it would be detrimental to Frank, he wishes to ignore the transmutation and call the property separate."
Frank finally contends that "[a]s a matter of public policy, ... Courts should generally exclude revocable estate planning documents like the [Transmutation] Agreement and Trust as evidence of transmutation upon marital dissolution." This contention was not raised below, so it is waived. (Martinez v. Scott Specialty Gases, Inc. (2000) 83 Cal.App.4th 1236, 1249, 100 Cal.Rptr.2d 403.) In any event, the policy he identifies"to encourage spouses to provide for their surviving spouses in their estate plans"is not undermined by our conclusion. We conclude, however, that his chosen language speaks to a contrary intent.
Because we reject Frank's claim that the assets identified in exhibit A to the Transmutation Agreement and Trust are his separate property, his contention that the court erred in ordering him to pay Barbara's fees incurred in valuing those community property assets is moot.
The order is affirmed. Respondent shall recover costs on appeal.
We concur: GILBERT, P.J., and YEGAN, J.
NOTES
[1] We refer to the parties by their first names for case of reference, and intend no disrespect.