Filed 11/1/23  SMS Financial XIX v. Stromberg CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SMS FINANCIAL XIX, LLC, | B313902 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC417394) |
| RICHARD R. STROMBERG, | |
| Defendant, | |
| LEA STROMBERG, | |
| Claimant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Susan Bryant-Deason, Judge.  Affirmed.

Kaplan, Kenegos & Kadin, Jerry Kaplan for Claimant and Appellant.

Aires Law Firm, Timothy Carl Aires for Plaintiff and Respondent.

_____

When a judgment creditor levied against the debtor's property, the trustee of the debtor's irrevocable family trust contested the levy on the ground that the trust, not the debtor, owned the property. The trial court found for the creditor, and the trustee appeals, contending the trust obtained a complete interest in the property before the creditor obtained its interest.

We disagree, and therefore affirm.

## BACKGROUND

The issue in these third-party claimant proceedings is whether a judgment creditor or the debtor's irrevocable family trust possesses a superior interest in real property located at 4821 Berryman Avenue in Culver City (the Berryman property).

### A.    Trust

Richard Stromberg and his wife, Mary Jo Stromberg, acquired the Berryman property in 1990. The grant deed stated the property was granted to "RICHARD R. STROMBERG AND MARY JO STROMBERG, husband and wife as Joint Tenants."

On January 1, 2005, Richard, a real estate broker, self-described as "separated from marriage," created the irrevocable Berryman Family Trust (Family Trust) "for the benefit of his children."[1]

The trust was created by a trust agreement between Richard and Lea Stromberg, his 16-year-old daughter.

Under the heading "Definition of Trust Estate," the agreement provided:

> "All property subject to this instrument from time to time, referred to as the 'trust estate,' which was

_____

[1] We will hereafter refer to the Strombergs by their first names for clarity and ease of reference.

2

contributed by the settlor and was the separate property of the settlor, shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in Schedule A (which is attached and made a part of this trust instrument), any other property that may become subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument."

Appended to the Family Trust was "Schedule 'A,' " which gave a bare legal description of the Berryman property. (Schedule A employed no prefatory language, e.g., "asset" or "estate.") Neither the trust nor Schedule A ever listed any asset other than the Berryman property.

Pursuant to the trust agreement, the trustee was empowered to "sell . . . , convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property . . . [¶] . . . [m]anage, control, improve, and maintain all real and person trust property . . . [¶] . . . [s]ubdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition . . . , and dedicate land or easements to public use . . . [¶] . . . [¶] . . . [and] encumber any trust property by mortgage, deed of trust, pledge, or otherwise . . . ."

Lea executed the agreement as trustee, stating it was "Agreed to and accepted this 1st day of January 2005."

The trust agreement made no mention of Mary Jo, and she was not a signatory.

In 2011, the Family Trust was amended. The amended trust stated that the trust estate was described in a Schedule A, but the amended trust itself contained no Schedule A or list of trust assets.

**B.      Subsequent Transactions Involving the Property**

After creation of the Family Trust, the Stromberg family took several actions with respect to the Berryman property that were inconsistent with the trust's ownership.

In 2006, Richard secured a loan from Washington Mutual Bank using the Berryman property as collateral.

On November 26, 2012, as part of marital dissolution proceedings, Mary Jo quitclaimed her interest in the Berryman property to Richard.

Also on November 26, 2012, Richard executed a grant deed transferring the Berryman property to Lea as trustee of the Family Trust.

On July 1, 2013, Richard, facing a loan default, entered a "home affordable modification agreement" in which he described the Berryman property as his "sole and separate property."

On November 18, 2013, Lea recorded the November 26, 2012 grant deed, noting in the recordation that Richard had conveyed the Berryman property to the Family Trust "pursuant to a deed dated November 26, 2012." Lea attached the 2011 amended Family Trust to the recordation, which contained no separate Schedule A or list of assets.

In 2019, Richard encumbered the Berryman property to secure a $162,094 home equity line of credit (HELOC).

4

## C. Creditor Proceedings

In 2009, SMS Financial XIX LLC (SMS Financial) sued Richard for failure to pay a line of credit, obtaining a judgment that after renewal stood at $735,533.81.

On August 20, 2010, SMS Financial recorded an abstract of judgment on the Berryman property.

On December 6, 2019, six years after Lea recorded the November 26, 2012 grant deed, SMS Financial obtained a writ of execution against Richard in the amount of $721,710.06.

On January 13, 2020, SMS Financial levied execution on the property to satisfy its judgment. The Los Angeles County Sheriff's Office issued a Notice of Sale.

On February 3, 2020, Lea, as trustee of the Family Trust, filed a third-party claim to contest the levy, claiming the trust, not Richard, owned the property. In support of the claim, Lea declared that the Berryman property "was transferred to [her], as trustee of the Trust, pursuant to a deed dated November 26, 2012, and recorded November 8, 2013." (In litigation, Lea claimed Richard transferred the property to the Family Trust in 2005, not 2012.)

On April 17, 2020, SMS Financial renewed the judgment for ten more years.

## D. Court Proceedings

SMS Financial filed a petition with the Los Angeles Superior Court to contest Lea's third-party claim. The matter was tried in Department 52.

Lea contended: (1) The Family Trust owned the property as of 2005; (2) the validity of the trust was not at issue; (3) Department 52, being a non-probate department, was not the proper venue to challenge the validity of the trust; (4) SMS

5

Financial was guilty of laches for waiting over six years to challenge the trust's ownership of the property; and (5) there was insufficient equity in the property to satisfy the judgment, rendering the Notice of Sale invalid.

SMS Financial contended: (1) No transfer of real property to a trust is effective against third parties unless the trust is recorded; (2) the trust was invalid because the designated trustee was a minor at the time of the trust creation; (3) the purpose of the trust was to defraud creditors; (4) the trust recorded on November 18, 2013, was invalid because it lacked a schedule describing the trust assets.

At trial, Lea argued that Richard believed he and Mary Jo held the Berryman property in joint tenancy, and Richard's intent in creating the trust was to sever the joint tenancy and thereby transfer a one-half, undivided separate property interest to the trust. "[I]t's not the whole property that was put in trust in 2005," Lea's counsel argued; only "half the property was put in the trust." In support of the argument, Richard testified that Mary Jo did not sign the Family Trust instrument in 2005 because "there was no need for her to sign it."

At the conclusion of trial, which had been plagued with remote communication problems, closing arguments were submitted by written brief. Lea contended the superior court's probate department had excusive jurisdiction over issues involving the validity of the Family Trust, and the homestead exemption would exhaust any equity in the property. SMS Financial contended for the first time that the Berryman property did not become a part of the Family Trust in 2005 because the trust could accept only Richard's separate property, and the property was community property. It

contended the property became part of the trust only in November 2012, at the earliest, and the homestead exemption would not apply because as of 2012 Richard had no ownership interest in the property, having conveyed it to the trust.

On May 18, 2021, the court issued a minute order denying Lea's claim. The court found that the trust property was limited to property that "was the separate property of the settlor, Richard Stromberg." However, the court found, because Richard and Mary Jo obtained the Berryman property while married and held title as joint tenants, it was presumed to be community property pursuant to Family Code section 760. There was no transmutation to separate property within the meaning of Family Code section 852 until November 26, 2012, when Mary Jo quitclaimed her interest to Richard as part of the marital dissolution. Therefore, the property was community property until November 26, 2012.

The court found it was "reasonable to draw an inference from the manner by which the Family Trust was created and from the trust's terms that Richard Stromberg was attempting to . . . . hinder Mary Jo Stromberg's ability to make a claim to Richard Stromberg's interest in the Berryman property."

The court found that the Family Trust could accept only Richard's separate property, and no transfer to the trust in 2005 could include the Berryman property notwithstanding its listing in the trust's Schedule A because at that time he held no separate interest in the property.

On the contrary, the court found, the Berryman property entered the Family Trust either in November 2012, when Richard acquired his separate interest, or November 2013, when Lea recorded a grant deed conveying the property to herself as

trustee.  Either way, the trust acquired the Berryman property only after SMS Financial recorded its abstract of judgment on August 20, 2010.

Therefore, the court concluded, SMS Financial's interest in the Berryman property was superior to the Family Trust's interest.  Accordingly, the court denied Lea's third-party claim.

On June 17, 2021, before any judgment was entered, Lea appealed from the May 28 order denying her claim.

We stayed appellate proceedings pending entry of a judgment, which Lea obtained on October 20, 2021.

After briefing was complete, we requested and received further briefing from the parties on issues relating to the validity of the Family Trust.

## DISCUSSION

Lea contends the Berryman property cannot satisfy the SMS Financial judgment against Richard because the Family Trust obtained a complete interest in the property in 2005, when Richard transferred it to the trust, five years before SMS Financial recorded its abstract of judgment on August 20, 2010.

Lea argues the trial court erred in relying on Family Code section 852 to find the transfer was ineffective, because that section does not apply to third-party creditor claims.  Instead, she argues, ownership of the property was governed by Evidence Code section 662, which provides that title to property is presumed to describe ownership interests.  Lea also contends SMS Financial had no standing to challenge the validity of the Family Trust or the way title to the property was held, and the trial court erred in failing to consider the issues of estoppel and laches.

8

## A.  Preliminary Matters

### 1.  SMS Financial's Motion to Dismiss is Denied

SMS Financial moves to dismiss the appeal because it arises from the May 2021 order, which is nonappealable, not from the October 2021 judgment.

Code of Civil Procedure section 720.390 provides that "[a]t the conclusion of the hearing [on a third-party claim], the court shall give judgment determining the validity of the third-party claim and may order the disposition of the property or its proceeds in accordance with the respective interests of the parties.  Subject to [appeal pursuant to] Section 720.420, the judgment is conclusive between the parties to the proceeding."  "An appeal may be taken from a judgment given pursuant to Section 720.390."  (Code Civ. Proc., § 720.420.)

Here, Lea appealed not from any judgment but from the May 2021 order denying her third-party claim.  Therefore, the appeal was premature.

However, we "may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."  (Cal. Rules of Court, rule 8.104(d)(2).)  "In exercising our discretion, we liberally construe a premature notice of appeal in favor of its sufficiency."  (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 375.)

Here, it is clear from the notice of appeal that Lea intended to challenge the trial court's impending judgment to deny her third-party claim, and it does not appear SMS Financial was misled or prejudiced by her appeal from a nonappealable order.  We will therefore treat the premature notice of appeal as being filed immediately after entry of the judgment.

9

SMS Financial's motion to dismiss the appeal is therefore denied.

## 2. Jurisdiction

As a further preliminary matter, Lea argues that Department 52 of the Los Angeles County Superior Court lacked jurisdiction to decide this matter because jurisdiction relating to internal trust disputes resides exclusively in the probate department. We disagree.

"In each county there is a superior court of one or more judges." (Cal. Const., art. VI, § 4.) The superior court has jurisdiction to determine the interests of parties in real property located within the State of California. (*Capra v. Capra* (2020) 58 Cal.App.5th 1072, 1082-1083.) It also has jurisdiction to hear claims concerning the enforcement of judgments. (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 263.) The instant matter concerns the enforcement of judgments and contested interests in real property, and therefore falls squarely within the jurisdiction of the superior court at large, even if the probate department would also have jurisdiction over trust issues.

Jurisdiction of a probate department over trust issues is nonexclusive. Probate Code section 17000 provides that the "superior court" has jurisdiction in proceedings relating to trusts, including "[a]ctions and proceedings to determine the existence of trusts" and "actions and proceedings involving trustees and third persons." (Prob. Code, § 17000, subds. (a) & (b).)

"There is but one Los Angeles Superior Court." (*People v. Dependable Ins. Co.* (1988) 204 Cal.App.3d 871, 874.) " 'The jurisdiction of causes is vested by the constitution in the [superior] *court*, not in any particular judge or department thereof.' " (*Magallan v. Superior Court* (2011) 192 Cal.App.4th

10

1444, 1453.) " 'Transferring a cause for trial or disposition from one of those departments to another does not effect a change or transfer of the jurisdiction of that cause; that remains at all times in the court as a single entity.' " (*Id*. at pp. 1453-1454.) This is so because the superior court is divided into departments, including the probate department, only as a matter of convenience, "but the subject matter jurisdiction of the superior court is vested as a whole." (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 695.)

Thus, although the Los Angeles Superior Court maintains a probate department, no authority vests that department with exclusive jurisdiction over probate matters. On the contrary, the California Constitution vests the superior court as a unified entity with plenary jurisdiction. As applicable here, even if the probate department has jurisdiction over internal trust affairs, that jurisdiction is nonexclusive. The superior court as a whole, which indisputably enjoys jurisdiction over actions involving contested interests in real property and the enforcement of judgments, also enjoys jurisdiction over ancillary issues that may arise in those actions, including issues relating to internal trust affairs.

Lea argues that the Law Revision Commission Comment to Probate Code section 17000, which states "it is intended that the department of the superior court that *customarily deals with* probate matters will exercise the exclusive jurisdiction relating to internal trust affairs" (italics added), indicates the Legislature intended to vest probate jurisdiction only in a superior court's probate department. (See Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) § 17000, p. 182.) We disagree for several reasons.

First, the language of Probate Code section 17000 is clear, and the conclusion is inescapable that it vests probate

11

jurisdiction in the superior court as a whole, not in any particular department.  We thus have no occasion to supplement the text of section 17000 with the Law Revision Commission's explanatory comment, which itself carries no weight of law.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 849 ["an uncodified statement of purpose cannot substitute for operative statutory language"].)

Second, Law Revision commentary is persuasive evidence only of "the intent of the Legislature in *subsequently* enacting its recommendations into law.' " (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 542, italics added.)  Here, the text of Probate Code section 17000 *preceded* the 1990 Law Revision Commission comment.  Although both Probate Code section 17000 and Law Revision Commission comment were drafted in 1990, section 17000 reenacted former Probate Code section 17000, operative 1987, which itself drew from Section 7–201(a) of the Uniform Probate Code (1987).  (Stats. 1986, ch. 820, § 40, operative July 1, 1987, and repealed Stats. 1990, ch. 79, § 13, operative July 1, 1991; Prob. Code, § 17000 (Deering, Lexis Advance through the 2023 Ex. Sess., ch. 1; 2023 Reg. Sess., ch. 133; Law Rev. com.).)  Thus, Probate Code section 17000 preceded the Law Revision Commission comment by at least three years.

Moreover, nothing suggests Section 7–201(a) of the Uniform Probate Code (1987) was intended to differentiate between a court and a department in a unified court system.  In 2010, Section 7-201(a) of the Uniform Probate Code (1987) was superseded and replaced by the Uniform Trust Code (which California has not adopted).

Section 2-203 of the Uniform Trust Code provides (analogous to Probate Code section 17000) that "(a) The [designate] court has exclusive jurisdiction of proceedings in this

12

State brought by a trustee or beneficiary concerning the administration of a trust. [¶] (b) The [designate] court has concurrent jurisdiction with other courts of this State of other proceedings involving a trust."[2]

The commentary to this section states, "This section provides a means for distinguishing the jurisdiction of the court having *primary* jurisdiction for trust matters, whether denominated the probate court, chancery court, or by some other name, from other courts in a State that may on occasion resolve disputes concerning trusts. . . . The topic . . . *need not be addressed in States having unified court systems*." (Italics added.)

The current commentary thus refers to primary rather than exclusive jurisdiction and excludes unified court systems from the ambit of Section 2-203 altogether. Therefore, even the uniform code affords no occasion to vest exclusive jurisdiction in subdivisions or departments of the California Superior Court (which is part of a unified court system). (See *People v. Hoffman* (2001) 88 Cal.App.4th 1, 2 [discussing court unification].)

The trial court therefore had jurisdiction to decide the merits of Lea's third-party claim to the Berryman property, even if that claim raised issues concerning internal affairs of the Family Trust.

---

[2] https://dta0yqvfnusiq.cloudfront.net/fifel38841394/2018/12/Uniform-Trust-Code-5c12a36374cd4.pdf, pp. 48-49, accessed November 1, 2023.

## B.     General Principles
### 1.     Enforcement of Judgments

The Enforcement of Judgments Law, Code of Civil Procedure section 680.010 et seq., "is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc*. (1995) 33 Cal.App.4th 540, 546.)[3]  Under it, a money judgment may be enforced for 10 years from the date of its entry, and may be renewed for an additional 10 years.  (§§ 683.020, 683.120, 683.130.)

The Enforcement of Judgments Law "includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor.  (§ 720.010 et seq.)  The purpose of third party claims is to give a quick and effectual remedy to third parties whose property has been levied upon by mistake.  [Citation.]  [¶]  The third party claims procedure is available to a person claiming a superior ownership or possessory right in real property that is subjected to attachment or execution to satisfy a money obligation." (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc*. (1995) 31 Cal.App.4th 1323, 1329.)

The creditor may petition the court for a hearing to determine the validity of a third-party's claim and the correct disposition of the property.  (§ 720.310, subd. (a).)  At any hearing on such a claim, the third-party has the burden of proof.  (§ 720.360.)  Once the third-party establishes its entitlement to the property, the burden shifts to the creditor to establish that its claim is superior.  (*Oxford Street Properties, LLC v.*

---

[3] Undesignated statutory references will be to the Code of Civil Procedure.

*Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 307 (*Oxford*).)

There is no requirement for a jury trial in third-party claim proceedings, and no findings are required. (§§ 720.400, 720.410.) In ruling on a third-party claim, the trial court renders "judgment determining the validity of the third-party claim and may order the disposition of the property or its proceeds in accordance with the respective interests of the parties." (§ 720.390.)

### 2. Community vs. Separate Property

Spouses may hold property as community or separate property. (Fam. Code, § 750.) Each spouse holds an equal interest in community property (Fam. Code, § 751), but neither owns an interest in the separate property of the other (Fam. Code, § 752). The community estate is liable for debt incurred by either spouse. (Fam. Code, § 910.)

Separate property of a married person includes property owned before marriage, acquired after marriage by gift or inheritance, or held in joint tenancy. (Fam. Code, §§ 750, 770.) All property acquired during marriage is presumed to be community property unless otherwise provided by statute. (Fam. Code, § 760.) For example, property acquired by spouses as joint tenants is presumed to be community property. (*In re Brace* (2020) 9 Cal.5th 903, 927, 938-939.) This is so regardless of the way a married couple takes title. (*Id.* at p. 927.)

Spouses may transmute community property to separate property by agreement or transfer. (Fam. Code, § 850.) For a transmutation to be valid, it must be "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is

adversely affected." (Fam. Code, § 852, subd. (a).) An "express declaration" need not use the terms "transmutation," "community property," or "separate property," but it must "expressly state[] that the characterization or ownership of the property is being changed." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272-273 [no particular locution required].) For example, the language "I give to the account holder any interest I have in the funds deposited in this account," would suffice to establish transmutation. (*Id*. at p. 273.) "The express declaration must unambiguously indicate a change in character or ownership of property. [Citation.] A party does not 'slip into a transmutation by accident.' " (*In re Marriage of Starkman* (2005) 129 Cal.App.4th 659, 664.)

### 3. Standards of review

"The interpretation of a trust instrument, like any written document, is a question of law. [Citations.] Under applicable rules of interpretation of written instruments, where there is no conflicting evidence, the reviewing court must independently interpret the document." (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944.)

"The primary duty of a court in construing a trust is to give effect to the settlor's intentions." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 826.) The settlor's intent " ' "must be ascertained from the whole of the trust instrument, not just separate parts of it." ' " (*Estate of Cairns*, *supra*, 188 Cal.App.4th at p. 944.)

We review a trial court's factual findings regarding ownership of property for substantial evidence. (*Oxford*, *supra*, 206 Cal.App.4th at p. 307.) When the facts are undisputed, we review questions of law de novo. (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5.) For example, whether

16

property is separate or community property is a question of law that is subject to de novo review when the facts are undisputed. (*Ibid*.)  Whether a written instrument effects a transmutation is also subject to independent review.  (*In re Marriage of Starkman, supra*, 129 Cal.App.4th at p. 664 ["In deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence"].)

## C. Application

### 1.  The Berryman Property was Community Property

Here, the 1990 grant deed conveyed the Berryman property to Richard and Mary Jo, "husband and wife as Joint Tenants." Under Family Code section 760, the property was presumed to be community property despite the form of title.  (*In re Brace, supra*, 9 Cal.5th at p. 927.)  Lea offered no evidence rebutting this community property presumption.

There was no transmutation until November 26, 2012, when Mary Jo quitclaimed her interest in the Berryman property to Richard as part of their marital dissolution proceedings.

In 2005, therefore, the Berryman property was community property.

### 2.      The Nature of the Trust Estate

Whether Richard's purported transfer of the Berryman property to the Family Trust was effective depends on the nature of the trust estate.

The trust instrument defines the trust estate in two sentences:  "All property subject to this instrument from time to time, referred to as the 'trust estate,' which was contributed by the settlor and was the separate property of the settlor, shall be held, administered, and distributed as provided in this

instrument.  The trustee shall hold, administer, and distribute the property described in Schedule A (which is attached and made a part of this trust instrument), any other property that may become subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument."  Schedule A sets forth a legal description of the Berryman property without reference to the nature of Richard's interest in the property.

The trust instrument's direction that the trustee "hold, administer, and distribute the property described in Schedule A," along with the Berryman property description in Schedule A, plainly establishes that the Berryman property was subject to the Family Trust.

However, the trial court relying primarily on the first sentence of the trust estate definition, determined that the trust property was limited to property that "was the separate property of the settlor, Richard Stromberg."

This interpretation, which Lea advanced at trial, is reasonable.  (The trust estate language admits another interpretation—that Richard intended to transmute the Berryman property from community to separate property by transferring it to the trust.  However, as Lea denied this construction at trial, we may disregard it.)  Therefore, Lea, as the party with the burden of proof on her third-party claim, was required to show that the trust estate, or at least the trust estate that Richard intended, consisted of that interest in "the property described in Schedule A" which Richard held as his "separate property," and which could thus be "contributed by [him]" to the trust.  To the extent the property described in Schedule A was

not Richard's separate property and thus could not be "contributed by [Richard]," it was not part of the trust estate.

Lea argued that Richard believed he and Mary Jo held the Berryman property in joint tenancy, and Richard's intent in creating the trust was to sever that joint tenancy and thereby transfer a one-half, undivided separate property interest to the trust. "[I]t's not the whole property that was put in trust in 2005," Lea's counsel argued; only "half the property was put in the trust."

In support of Lea's claim, Richard testified that Mary Jo did not sign the trust document in 2005 because "there was no need for her to sign it." This statement makes sense if Richard believed he was unilaterally severing a joint tenancy with Mary Jo and transferring his separate interest, but not her interest, to the trust. Richard, a real estate broker, appeared to understand that if he was going to transfer the entire fee interest in the Berryman property to the trust, he would "need for [Mary Jo] to sign it."

We conclude Richard transferred no separate property interest in the Berryman property because despite his belief to the contrary, he never held such an interest. Notwithstanding the form of title on his and Mary Jo's 1990 deed, the married couple held title as community property, not as joint tenants. (*In re Brace*, *supra*, 9 Cal.5th at pp. 937-938; see also *Tomaier v. Tomaier* (1944) 23 Cal.2d 754, 758 [property held as community property "cannot also be held in joint tenancy"]; accord, *Raney v. Cerkueira* (2019) 36 Cal.App.5th 311, 320.) Therefore, Richard's attempt to sever what he believed was a joint tenancy into unilaterally transferable separate property interests failed as a matter of law.

Richard's failure to transfer a legally cognizable interest in property to the trust in 2005 did not necessarily invalidate the trust. As Bogert explains, "the lack of trust property does not mean that the trust instrument cannot create a valid trust. It simply means that no trust under the instrument exists *yet*. A valid trust may be created in the future at such time as property becomes subject to the trust, as when the settlor transfers property to the trustee at a later date and the trustee accepts the property as property subject to the trust." (2 Bogert on Trusts (3d ed. 2007) § 111, p. 304 (fn. omitted).) Here, Richard eventually obtained the fee interest in the Berryman property as a result of the judgment dissolving his marriage in 2011 and Mary Jo's quitclaim deed to him in 2012. Thereafter he could, and did, transfer by grant deed the entire fee interest in the Berryman property to Lea, as trustee of the Berryman Family Trust. By then, however, SMS Financial's judgment lien had attached to the community property interest in the Berryman property.

Because Lea failed to establish that Richard transferred anything to the Family Trust before SMS Financial obtained an interest in the Berryman property, the trial court properly denied her third-party claim.

Lea argues the trial court erred in failing to apply the doctrines of estoppel and laches to foreclose SMS Financial's challenge to her third-party claim because the judgment creditor took no action for more than six years after the deed from Richard to the Family Trust was recorded in 2013. We disagree.

Judgment enforcement is a comprehensive and detailed statutory process, with clear deadlines. (*Imperial Bank v. Pim Electric Inc.*, *supra*, 33 Cal.App.4th at p. 546.) By statute, a

20

money judgment may be enforced for 10 years from the date of its entry and may be renewed, in which case it is enforceable for an additional 10 years.  (§§ 683.020, 683.120, 683.130; *Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 372-373.)  Estoppel and laches are therefore not defenses to an action on a judgment. (*United States Capital Corp. v. Nickelberry* (1981) 120 Cal.App.3d 864, 867 [an action based on a judgment is an action at law; "[a]n action at law may be brought at any time within the period of the statute of limitations"].)

## DISPOSITION

The order is affirmed.  Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.